**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jaime J. PEREZ, Defendant–Appellant.**

No. 07CA1746.

Colorado Court of Appeals, Div. VII.

Feb. 5, 2009.

Certiorari Granted Aug. 3, 2009.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Nelson Boyle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Jaime Perez, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession with intent to distribute a schedule II controlled substance and possession of drug paraphernalia. He also appeals the fifteen-year sentence imposed by the trial court. Because we conclude that the search at issue was proper and that the trial court did not abuse its discretion in sentencing defendant here, we affirm.

## I. Background

On October 9, 2006, a Grand Junction police officer pulled over defendant and his passenger after seeing defendant commit a traffic violation while driving a friend's car. Upon discovering that defendant had an active warrant, the officer arrested defendant and then searched the passenger compartment of the vehicle. The officer testified that during the search, he noticed that the vehicle's glove compartment was secured by a combination lock but that it was damaged such that he could see into it through a three-quarter inch gap. Through this gap, the officer saw a cloth pouch that he thought might contain drugs. Defendant claimed that he had no access to the glove compartment and told the officer that he was willing to call the owner of the vehicle to try to gain access to the glove compartment. The officer testified, however, that he was able to pull on the glove compartment door in a way that enabled him to reach into the gap and retrieve the bag, which contained twenty-two individually wrapped baggies of methamphetamine.

The officer further testified that after advising defendant of his *Miranda* rights, he asked defendant if he wanted to make a statement. According to the officer, defendant indicated that he did and stated that he had planned to sell the drugs seized from the glove compartment "because he had fallen on some hard times and needed to get some quick cash." Defendant testified that he was not advised of his *Miranda* rights until he was booked at the police station and that he made no incriminating statements to the officer.

As a result of this incident, defendant was charged with possession with intent to distribute a schedule II substance and possession of drug paraphernalia. Prior to trial, defendant filed motions to suppress both the evidence seized from the glove compartment and the statements the officer said defendant had made after he was arrested. As to the statements, defendant argued that he was not advised of his *Miranda* rights and that even if he had made such statements to the officer, they were fruits of the illegal search and should be suppressed.

After a suppression hearing, the trial court denied defendant's motions. With respect to the search, the court raised the issue of defendant's Fourth Amendment standing (i.e., whether defendant had a reasonable expectation of privacy in the area searched) sua sponte and concluded that defendant did not have a reasonable expectation of privacy in the locked glove compartment of another's car. With respect to the statements, the court found that the officer had advised defendant of his *Miranda* rights and that defendant had made a voluntary, knowing, and intelligent waiver of those rights.

The jury subsequently found defendant guilty on both counts charged, and the trial court sentenced him to fifteen years in pris-

on. Defendant now appeals the judgment and sentence.

## II. Suppression Motions

Defendant argues that the trial court erred in denying his motions to suppress the evidence seized from the locked glove compartment and the statements that he made after he was arrested. We disagree.

■ When reviewing a trial court's denial of a motion to suppress, we defer to the court's findings of historical fact but review its application of legal standards to those facts de novo. *People v. Souva*, 141 P.3d 845, 847 (Colo.App.2005).

### A. Sua Sponte Standing Determination

■ As an initial matter, defendant contends that the trial court reversibly erred in raising the Fourth Amendment standing/reasonable expectation of privacy issue sua sponte. We need not decide this question because, as discussed below, assuming defendant had a reasonable expectation of privacy in the locked glove compartment such that he had standing under the Fourth Amendment to challenge the search, we conclude that the search was proper as incident to defendant's lawful arrest. Accordingly, any error by the trial court in raising the Fourth Amendment standing issue sua sponte was harmless. *See People v. Rowe*, 837 P.2d 260, 264 (Colo.App. 1992), *rev'd on other grounds*, 856 P.2d 486 (Colo.1993).

### B. Search of the Locked Glove Compartment

■ In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court adopted a bright-line rule regarding the permissible scope of a search of a vehicle's passenger compartment when one of the vehicle's occupants is lawfully arrested. Specifically, the Court held: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "may also examine the contents of any containers found within the passenger compartment." *Id.*

(footnotes omitted); *accord People v. H.J.*, 931 P.2d 1177, 1183 (Colo.1997); *People v. McMillon*, 892 P.2d 879, 883–85 (Colo.1995). The Court specifically noted that such containers include closed or open glove compartments. *Belton*, 453 U.S. at 460 n. 4, 101 S.Ct. 2860; *accord McMillon*, 892 P.2d at 883 n. 3. In so holding, the Court observed that the justification for such a search "is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Belton*, 453 U.S. at 461, 101 S.Ct. 2860.

Relying on the reasoning of *Belton* and the Court's subsequent clarifications thereof, those United States circuit courts that have considered the question of whether *Belton* allows police officers to search *locked* (as opposed to closed) glove compartments have unanimously held that it does. *United States v. Nichols*, 512 F.3d 789, 797 (6th Cir.2008) (noting the unanimity among the circuits and collecting cases); *see United States v. Woody*, 55 F.3d 1257, 1269–70 (7th Cir.1995); *United States v. McCrady*, 774 F.2d 868, 872 (8th Cir.1985). Many state courts have followed suit. *See, e.g., Staten v. United States*, 562 A.2d 90, 92–93 (D.C.1989) (cited with approval in *McMillon*, 892 P.2d at 884); *People v. Eaton*, 241 Mich.App. 459, 617 N.W.2d 363, 367 (2000); *People v. Ellis*, 93 A.D.2d 657, 462 N.Y.S.2d 867, 870 (N.Y.App.Div. 1983), *aff'd*, 62 N.Y.2d 393, 477 N.Y.S.2d 106, 465 N.E.2d 826 (1984); *State v. Massenburg*, 66 N.C.App. 127, 310 S.E.2d 619, 622 (1984). These courts appear to base this conclusion on *Belton*'s specific reference to closed glove compartments, *see, e.g., McCrady*, 774 F.2d at 871, and on the intended bright-line nature of the *Belton* rule. *See, e.g., Nichols*, 512 F.3d at 797.

■ The rationale of these cases, coupled with our own supreme court's consistent emphasis on the bright-line nature of the *Belton* rule and its citation with approval of the District of Columbia Court of Appeals' decision in *Staten*, *see McMillon*, 892 P.2d at 884, persuades us that a police officer may properly search a locked glove compartment incident to the lawful arrest of an occupant of a vehicle. Although defendant argues that

*Belton* has gone too far in allowing searches like that at issue here, we are not at liberty to ignore the pronouncements of the United States Supreme Court and Colorado Supreme Court on this issue.

Because it is undisputed that defendant's arrest here was lawful and that the officer's search was incident to that arrest, we hold that the search at issue was proper.

## C. Post–Arrest Statements

Our resolution of the propriety of the search of the glove compartment also resolves defendant's assertion that the trial court erred in denying his motion to suppress the statements that he made regarding the methamphetamine found in the car. We note that defendant does not argue on appeal that such statements were obtained in violation of his *Miranda* rights. Rather, he argues only that these statements were "fruits of the poisonous tree"—that is, that he would not have made such statements had the officer not illegally seized the methamphetamine from the glove compartment. Because we have concluded that the search of the glove compartment was proper, there was no poisonous tree and, thus, no fruit here. Accordingly, defendant's argument that the trial court erred in refusing to suppress his statements fails.

## III. Sentencing

Finally, defendant contends that the trial court abused its discretion by sentencing him to fifteen years in prison. Specifically, defendant argues that the trial court improperly relied on its finding that he testified falsely at trial and that it did not properly consider his youth, lack of prior felony convictions, and eligibility for a community corrections sentence. We again disagree.

On appellate review of a sentence, we accord deference to the decision of the sentencing court and will not overturn the sentence imposed absent a showing of a clear abuse of discretion. *People v. Fuller,* 791 P.2d 702, 708 (Colo.1990). In exercising its discretion, the trial court must consider: (1) the nature of the offense, (2) the character and rehabilitative potential of the offender,

(3) the development of respect for the law and the deterrence of crime, and (4) the protection of the public. *Id.* If the sentence imposed is within the range required by law, based on appropriate considerations as reflected by the record, and factually supported by the circumstances of the case, we must uphold it. *Id.* "Only in exceptional cases will an appellate court substitute its judgment for that of the trial court in sentencing matters." *Id.*

Here, we conclude that the trial court did not abuse its discretion in sentencing defendant. First, it is undisputed that defendant's sentence of fifteen years in the custody of the Department of Corrections is within the applicable presumptive sentencing range of four to sixteen years. § 18–1.3–401(1)(a)(V)(A), (10)(a), (10)(b)(XI), C.R.S. 2008.

Second, the trial court based defendant's sentence on appropriate considerations that are factually supported by the record. For example, the trial court properly considered the nature of the offense, stating, "I don't see this much methamphetamine that often. This is what I would consider to be a fairly substantial amount of methamphetamine." It also stated that the fact that defendant intended to distribute the methamphetamine, as opposed to being an addict or a user, "takes it to another level."

The trial court likewise properly considered the character and rehabilitative potential of the offender. In evaluating defendant's rehabilitative potential, the court found it significant that defendant had not taken responsibility for his actions. Specifically, with regard to the officer's testimony that defendant said that he had intended to sell the methamphetamine because he had been facing "hard times," the court said to defendant:

> I don't think it's a stretch of anybody's imagination to think that the jury was convinced by that testimony that [the officer] gave, as opposed to you saying that you never made that statement and trying to impugn [the officer's] credibility and his reputation. And you are not being punished for that but I think that it goes to your ability to be rehabilitated. You are

not accepting responsibility, trying to say that the office [sic] lied about this methamphetamine for some unknown reason.

 Although a court may not rely solely on a defendant's questioning of a police officer's credibility in sentencing the defendant, because to do so would undermine the defendant's fundamental right to require the prosecution to prove every element of the case, *see People v. Wilson*, 43 Colo.App. 68, 71, 599 P.2d 970, 973 (1979), "a sentencing court may consider a defendant's false testimony as probative of his rehabilitative potential." *See id.* at 71, 599 P.2d at 972. The trial court expressly did so here.

Finally, the trial court properly considered the development of respect for the law and deterrence of crime and the protection of the public. Regarding deterrence, the court stated, "[P]eople who distribute methamphetamine in this community should expect me to send them to the penitentiary because I don't think a Community Corrections sentence or sentence to probation deters people from distributing methamphetamine." As to protection of the public, the court stated that it gave "a lot of weight to" the evidence it heard regarding people who distribute methamphetamine in the community and the fact that such distribution "has a tremendous impact on everybody, including [defendant's] own children." The court also indicated that it was concerned by the fact that the age of those using methamphetamine was getting younger and younger.

 Defendant does not challenge these findings. Rather, he argues that the trial court did not properly consider in its sentencing determination the fact that he was twenty-five years old when he committed the crime, that he did not have any prior felonies, and that the Community Corrections Board found that he was eligible for a community corrections sentence. We disagree.

Although the court was free to consider defendant's age in its sentencing determination, it was not required to do so. *See People v. Gholston*, 26 P.3d 1, 16 (Colo.App.2000) ("In addition to the [statutorily-required] factors ... the trial court *may* consider at sentencing: '[U]nusual aspects of the defendant's character, past conduct, habits, health, [and] *age* ....' ") (emphasis added) (quoting *People v. Leske*, 957 P.2d 1030, 1043 (Colo. 1998)). Moreover, although there was some dispute as to whether defendant had any prior felony convictions, the trial court stated that, for purposes of sentencing, it would assume that he had none. Finally, the record reflects that the trial court considered the possibility of a community corrections sentence but determined that, on the facts of this case, such a sentence would be inappropriate.

Because the trial court's findings are well-supported by the record, we conclude that the court properly exercised its discretion in sentencing defendant to fifteen years in prison.

The judgment and sentence are affirmed.

Judge RUSSEL and Judge J. JONES, concur.