Jaime PEREZ, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 09SC171.

Supreme Court of Colorado,
En Banc.

May 10, 2010.

Rehearing Denied June 21, 2010.*

* Justice Rice, Justice Coats, and Justice Eid would grant the petition.

Douglas K. Wilson, Colorado State Public Defender, Katherine Brien, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the opinion of the court.

## I. Introduction

Today we are issuing a series of opinions interpreting and applying *Arizona v. Gant,*[1]

the recent United States Supreme Court decision pertaining to the Fourth Amendment warrant requirement in the car context. We conduct a substantive analysis of the decision's implications in the other opinions.[2] We apply that analysis here.

We granted certiorari to review the court of appeals' published affirmance of a trial court's denial of defendant Jaime Perez's motion to suppress evidence. *People v. Perez,* 214 P.3d 502 (Colo.App.2009). Under controlling precedent in effect at the time of Perez's arrest and applied by the trial court and court of appeals in their rulings, police officers were allowed to search the entire passenger compartment of a vehicle, and any open or closed containers within it, upon the arrest of any of its recent occupants. Shortly after the court of appeals released its opinion, however, the United States Supreme Court significantly narrowed this search-incident-to-arrest exception to the Fourth Amendment warrant requirement. In *Arizona v. Gant,* the Supreme Court announced that the search-incident-to-arrest exception no longer applies to cases where the arrested party has been secured by the police and cannot access the interior of the vehicle, unless it is reasonable to believe that evidence of the offense upon which the arrest is based might be found in the vehicle. —— U.S. at ——, 129 S.Ct. at 1714.

We conclude that, following *Gant,* the search-incident-to-arrest exception does not apply in this case and the search of the passenger compartment of Perez's car was unconstitutional. The drugs found in the glove compartment during the search are not admissible in evidence. Because statements Perez made following the discovery of the drugs were the fruit of this unlawful search, the evidentiary use of the statements must also be suppressed.

## II. Facts and Procedural History

In late 2006, Officer Jason Sawyer of the Grand Junction police department pulled over Jaime Perez for driving with a broken headlight. One passenger was also in the car. When Perez could not provide a license, insurance, or registration, Officer Sawyer ran his name through a database and learned that Perez had a suspended license and an outstanding warrant for his arrest. The officer arrested him on the outstanding warrant and placed him in handcuffs in the backseat of his patrol car.

Officer Sawyer then conducted a search of the passenger compartment of the vehicle while Perez's passenger stood outside with another officer. While searching the car, he saw that the glove compartment was broken, allowing him to see into it through a three-quarter inch crack at the side of the compartment door. He saw a cloth pouch that he suspected contained drugs. The glove compartment was locked with a combination lock built into the door, and the officer was unable to open it. He asked Perez and his passenger whether they knew the code; neither did. Upon returning to the vehicle the officer found that he was able to reach into the compartment through the crack and remove the pouch. It contained twenty-two individual baggies of methamphetamine. From his perch in the backseat of the cruiser, Perez saw Officer Sawyer remove the drugs from the car.

During the drive to the police station, Officer Sawyer read Perez his *Miranda*[3] rights and elicited statements from him about the drugs. Officer Sawyer maintains that Perez told him the drugs were his and he planned to sell them. Perez later claimed that he was not read his rights during the drive and had said that the drugs were not his.

At a suppression hearing, Perez testified that the car was borrowed from a friend and that he had been driving it for only a short time—he had driven from a friend's home to a store and was returning when he was pulled over. He testified that he had no access to the glove compartment, did not

---

1. *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

2. *People v. McCarty,* 229 P.3d 1041 (Colo.2010); *Pineda v. People,* 08SC756, 2010 WL 1840824, 230 P.3d 1181 (Colo. May 10, 2010); *People v. Chamberlain,* 229 P.3d 1054 (Colo.2010).

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

have the combination to it, and had never been in it.

The trial court ruled that both the drugs and Perez's statements to the police officer were admissible. Although the prosecution did not make any arguments about the defendant's standing, the trial court ruled sua sponte that because Perez had disclaimed any possessory interest in the glove compartment he had no expectation of privacy under the Fourth Amendment and therefore had no standing to raise a claim of an unconstitutional search. The trial court also ruled that Officer Sawyer had properly advised Perez of his *Miranda* rights, and that his statements in the police car were admissible.

Perez argued to the court of appeals that the evidentiary use of the drugs and his statements in the police car should be suppressed because the search of the locked glove compartment had been improper and the questioning in the police car was a fruit of the unlawful search. The court of appeals did not address the issue of standing. Instead, it held that the search of the locked glove compartment was not a violation of Perez's Fourth Amendment rights. Because the search was constitutional, the questioning was not the fruit of any unlawful action and Perez's statements were admissible.

The court of appeals issued its decision on February 5, 2009, and on April 21, 2009, the United States Supreme Court issued its decision in *Gant*, significantly limiting the reach of *New York v. Belton*, which had previously governed searches incident to the arrest of vehicle occupants. 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Perez now appeals to this court, arguing that *Gant* applies to this case and the drugs and statements should be suppressed as the fruit of an unlawful search. The state argues that Perez lacks standing to challenge the search because he disclaimed any possessory interest, and therefore he had no reasonable expectation of privacy, in the glove compartment.

## III. Standard of Review

■■ When reviewing suppression orders, we defer to the trial court's factual findings as long as they are supported by competent evidence in the record. *People v. Platt*, 81 P.3d 1060, 1065 (Colo.2004). We review de novo whether a search or seizure satisfies the requirements of the Federal Constitution. *People v. Matheny*, 46 P.3d 453, 461 (Colo.2002).

## IV. Analysis

### A. Evidentiary Use of the Drugs is Suppressed

■■ Perez must have standing before he can challenge the search of the vehicle. The Fourth Amendment right to be free of unlawful searches and seizures is a personal right and may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citations omitted). The only person who can assert the right is a person with a possessory or proprietary interest in the property or premises searched. *Id.* at 134, 99 S.Ct. 421. A vehicle occupant who is arrested must have a possessory or proprietary interest in the vehicle in order to assert a Fourth Amendment right to be free from an unlawful search. *Id.* at 149, 99 S.Ct. 421; *see also, United States v. Jefferson*, 925 F.2d 1242, 1250 (10th Cir.1991). Without such a possessory interest, an individual lacks standing to assert a Fourth Amendment violation.

■ In this case, there is no dispute between the parties that Perez was using the car with the permission of the owner on the night of his arrest, and both parties acknowledge that such permission gave Perez a possessory interest in the vehicle. *People v. Naranjo*, 686 P.2d 1343, 1346 (Colo.1984). Perez has standing to assert his Fourth Amendment right to be free of an unlawful search of the vehicle he possessed.

Prior to the U.S. Supreme Court's ruling in *Gant*, *New York v. Belton* controlled, in the car context, the search-incident-to-arrest exception to the Fourth Amendment warrant requirement. As we discuss in *People v. Chamberlain*, *Belton* had been widely understood to establish a bright line test: if an occupant of a car was arrested, the passenger compartment of that vehicle could be searched. 229 P.3d at 1056. Colorado fol-

lowed this generally accepted interpretation of *Belton.* *People v. Kirk,* 103 P.3d 918, 922 (Colo.2005) ("The authority to search a vehicle's passenger compartment incident to the arrest of an occupant is automatic and does not depend on the facts of a particular case.").

■ *Gant* narrowed this rule, leaving only two scenarios in which police officers may search a vehicle's passenger compartment after arresting an occupant. —— U.S. at ——, 129 S.Ct. at 1714. First, an officer may search the vehicle if the arrested occupant is unsecured and can access the interior of the vehicle. *Id.* Second, an officer may conduct a search if it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle. *Id.*

■ Perez was handcuffed and secured in the back of a police cruiser at the time the search was conducted. Under *Gant,* the officers could not search the vehicle in those circumstances unless it was reasonable to believe that evidence of the offense of arrest might be found in the vehicle. In the cases decided today, we hold that a reasonable belief to conduct such a search exists when there is a "degree of articulable suspicion commensurate with that sufficient for limited intrusions like investigatory stops." *People v. McCarty,* 229 P.3d 1041, 1046 (Colo.2010) (citing *People v. Chamberlain,* 229 P.3d 1054, 1057).

In *Gant,* the Supreme Court held that an officer arresting a suspect for driving with a suspended license did not have the requisite degree of suspicion to make it reasonable to believe evidence of the offense of arrest would be found in the vehicle. In *Chamberlain,* we hold that officers lacked a reasonable belief to search the car when a person was arrested for false reporting of her place of residence. In *McCarty,* an unused glass pipe found on the arrestee's person was insufficient to provide a reasonable belief that more evidence of possession of drug paraphernalia would be found in the car.

■ McCarty may have had more drug paraphernalia in his car, but officers were given no reason to believe that was the case. Similarly, with *Gant* and *Chamberlain,* it is conceivable that the arrestees had evidence of the crime of arrest in their vehicles—Gant could have had a record of his suspended license, Chamberlain may have had documentation of her correct place of residence—but again, the arresting officers had no reason to believe such evidence existed within the vehicle. Here, Perez was arrested on an outstanding warrant. The charge underlying the warrant is not named in the record, and the Attorney General has not sought to supplement the record to add that information. The record before us gives no reason to believe that there was any "articulable suspicion" that evidence of a crime relevant to the previously-issued arrest warrant would be found in Perez's vehicle at the time of arrest. In contrast to *Gant* (where the act of driving was the offense), *Chamberlain* (where the driver's license carried by the arrestee in the car was incorrect), and *McCarty* (where the driver emerged from the car with the offending paraphernalia on him), the evidence that led to Perez's arrest (the outstanding warrant) had no connection to the vehicle driven by Perez. The officer learned about the outstanding warrant by accessing electronic records in his police car.

Because Perez was secured in a police cruiser and could not access the car, and because officers had no reason to believe that evidence of the offense of arrest was present in the vehicle, there was no justification under *Gant* to search Perez's car after his arrest.

■ The prosecution argues that, regardless of *Gant,* Perez had disclaimed his possessory interest in the glove compartment when he claimed he had never been in it and could not access it. Without a possessory interest in the glove compartment, the prosecution would have us find that Perez had no protected Fourth Amendment privacy interest and lacks standing to protest a search of that compartment.

Even if we assume, without deciding, that Perez lacked a possessory interest in the glove compartment, such a conclusion would be irrelevant. Both sides in this case agree that Perez had a possessory interest in the car and therefore had standing to protest the

search of the car itself. As we have explained above, *Gant* leaves the officers in this case with no lawful basis to search the vehicle without a warrant. Because the officers could not access the glove compartment without first gaining access to the car itself, the police could not lawfully access the glove compartment. This is the necessary and unavoidable result of *Gant.* Unless some other established exception to the warrant requirement applies, a container cannot be accessed if the vehicle containing it cannot be searched under *Gant. See, e.g., Pineda v. People,* 230 P.3d 1181 (Colo. 2010). No other exception to the warrant requirement was argued in this case.

 Consistent with our holding in *McCarty,* we decline to apply a good faith exception to the officer's actions. We must view the events in this case as if *Gant* were the law at the time of the search. Under *Gant,* the arresting officer had no grounds to search the car and so he had no authority to search the glove compartment. Evidence of the drugs found in the compartment must be suppressed.

## B. Evidentiary Use of the Statements is Suppressed

 Evidence of a crime that is derived from evidence discovered through illegal police activity may be suppressed under the fruit-of-the-poisonous-tree doctrine. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This derivative evidence will not be rendered inadmissible simply because it would not have been discovered but for the wrongful police activity. *Id.* at 487, 83 S.Ct. 407. Instead, derivative evidence may be admissible if the connection between the illegal action and the derivative evidence is attenuated such that the derivative evidence is "sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. 407. Attenuation can occur either when the causal connection is remote, or "even given a direct causal connection, the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Hudson v. Michigan,* 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).

 A confession that results from unlawful police behavior could be the fruit of either an illegal arrest or an illegal search or seizure. The Supreme Court has decided several cases in which a confession resulted from an illegal arrest, beginning with *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In *Brown,* the police arrested the defendant without probable cause, but then properly administered the *Miranda* warnings before interrogating him. The Supreme Court held that the *Miranda* warnings are not sufficient to protect a defendant's Fourth Amendment rights (they are aimed at protecting Fifth Amendment rights), and the advisement did not attenuate the taint of the Fourth Amendment violation. *Id.* at 601–02, 95 S.Ct. 2254.

The Court declined to adopt a per se rule that a confession could never be voluntary following an illegal arrest. Nonetheless, in two later cases the Court emphasized that an illegal arrest (or custody equivalent to arrest) was not attenuated by *Miranda* warnings or by a period of up to six hours and access to outside visitors. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Confessions resulting from detentions that were not equivalent to arrests have been allowed to stand. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

In addition to looking at the circumstances and events that might attenuate the taint of police misconduct, the Supreme Court has also examined the constitutional right intended to be protected by the exclusionary rule to decide whether suppression of the evidence actually protects that right. When the Court decides suppression does not protect the right at stake, the court has ruled suppression unnecessary. *See, e.g., United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) (an arrest was unlawful, but the in-court identification of the defendant by his victim was not the product of any police misconduct and its suppression would not serve to protect Fourth Amendment rights); *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (an initial search was unlawful, but the live wit-

ness testimony of a non-defendant at trial was so distant from the initial search that its suppression would not serve to protect constitutional rights).

Using this purpose-driven analysis, the Supreme Court decided in *New York v. Harris* that a station house confession was admissible despite an initial unlawful entry into the defendant's home. 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). Harris was arrested after police arrived at his door with probable cause to arrest him, but illegally entered his home before taking him into custody. The Court first distinguished some of its earlier cases by noting that the arrest in *Harris* was lawful—it was supported by probable cause. *Id.* at 18–19, 110 S.Ct. 1640. Harris could have been arrested anywhere outside of his home. The Court reasoned that the warrant requirement for making an in-home arrest serves the purpose of protecting the home itself, so only evidence that was the direct result of arresting Harris in his home, as opposed to arresting him somewhere else, must be excluded. *Id.* at 20, 110 S.Ct. 1640. For example, a voluntary statement Harris made to officers while still in his home was properly excluded by a lower court. *Id.* However, his confession at the station house was admissible because it was not the fruit of the fact that the arrest occurred in his home. His custodial confinement in the station house would have happened regardless of the place of his arrest, so the exclusion of his confession there would not protect the warrant requirement.

More recently, in *Hudson v. Michigan*, the officers entered a home in violation of the knock-and-announce rule and executed a valid search warrant. The Supreme Court ruled that the purposes of the knock-and-announce rule were not served by suppressing the evidence obtained in the search. Those purposes included the protection of property that might be destroyed upon forced entry, the prevention of violence that might occur upon being surprised in one's own home, and "those elements of privacy and dignity that can be destroyed by a sudden entrance." 547 U.S. at 594, 126 S.Ct. 2159. But because the purposes of the knock-and-announce rule did not extend to

preventing the government from seeing or taking evidence described in a valid warrant, no constitutional right would be protected by suppressing the evidence. *Id.* Moreover, the Supreme Court emphasized that the illegality in *Hudson* stemmed from the manner of entry, not the entry itself; the evidence would have been obtained even if the knock-and-announce rule had been properly obeyed. *Id.* at 591, 126 S.Ct. 2159.

The case now before us is not similar to either *Harris* or *Hudson*. Neither dealt with the situation we confront here, where an illegal search led to a confession. Moreover, a key to the analysis in both cases was the observation that the disputed evidence would have been obtained even if the protected rights at issue had not been violated. Here, there is no analogy to the inevitable arrest in *Harris* or the inevitable search in *Hudson*. As we held above, there is nothing in the record or the briefs to indicate that this search would have happened lawfully. The drugs were only discovered because of the illegal search and the confession was only elicited after their discovery.

In contrast to *Hudson*, where no purpose of the knock-and-announce rule was violated by the admission of the evidence in question, and *Harris*, where no purpose of the arrest warrant rule was violated by the admission of the police station confession, in this case the admission of Perez's confession would directly violate the privacy interest he has in the vehicle he was lawfully driving. Hudson had no privacy interest that shielded his house from a valid search warrant, and Harris's police station confession was held to be unrelated to the privacy interest he had in his home because his arrest and confinement would have occurred even if his home were not involved. But here the search violated Perez's legitimate privacy interest in the car, and, unlike *Harris*, this unlawful police conduct is not ameliorated by any possibility that the police would have lawfully obtained the evidence in some other way.

Unlike confessions that result from illegal arrests, the Supreme Court has not directly addressed the issue of confessions resulting from illegal searches. Nonetheless, existing authority holds that confessions such as the

one given by Perez, where a defendant was present at the search and then confesses to the evidence discovered, are not admissible as evidence:

> In the typical case in which the defendant was present when incriminating evidence was found in an illegal search or in which the defendant was confronted by the police with incriminating evidence they had illegally seized, it is apparent that there has been an exploitation of that illegality when the police subsequently question the defendant about that evidence or the crime to which it relates.

6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.4(c) (4th Ed.2004) (quotations and citations omitted).

■■■ In cases where a confession follows an illegal arrest, the fact of illegal custody is just one factor to be considered when determining the voluntariness of a confession. *Brown*, 422 U.S. at 603–04, 95 S.Ct. 2254. By contrast, in cases where confessions follow an illegal search, the confession is often elicited solely because of the illegal search—a defendant sees that an officer has obtained the incriminating evidence and then speaks. LaFave, § 11.4(c).[4] The causal connection between the illegal search and the confession is a tight one. "[I]t is crystal clear that giving the defendant the *Miranda* warnings will not break the causal chain between an illegal search and a subsequent confession." *Id.* (citations omitted).

Colorado case law closely follows these generally accepted holdings. We have held that the evidentiary use of a confession elicited from an arrestee after drugs were found during an illegal search of a backpack must be suppressed under the fruit-of-the-poisonous-tree doctrine, even though the suspect was properly advised under *Miranda* before the statements were made. *People v. Hines*, 195 Colo. 71, 73, 575 P.2d 414, 416 (1978). In a similar case, we held that evidentiary use of statements made after drugs were discovered during an unlawful search of a fanny pack

also must be suppressed. *People v. Corpany*, 859 P.2d 865, 872 (Colo.1993).

Perez's confession to the arresting officer in the police cruiser was the direct result of the officer's illegal search. The *Miranda* warnings administered to Perez do not cure the taint of that unlawful activity. Suppression of the evidentiary use of Perez's confession is necessary to protect his Fourth Amendment right to be free of unlawful searches.

## V. Conclusion

Under *Gant*, the search of Perez's car was unlawful and any evidence discovered in that search must be suppressed. Evidence of the drugs found in the glove compartment is therefore inadmissible. Because Perez's subsequent statements about the drugs are the fruit of this unlawful search and are not sufficiently attenuated from the illegal police conduct, they too must be suppressed. The judgment of the court of appeals is reversed and the case is remanded with directions to return it to the district court for further action consistent with this opinion.

Justice EID dissents, and Justice COATS joins in the dissent.

Justice EID, dissenting.

I respectfully dissent from the majority's opinion on two grounds. First, the majority invalidates the search in this case under the "evidence-gathering" rationale of *Gant* even though it does not know the offense for which the defendant was arrested—the critical piece of information on which the *Gant* determination is made. *See Arizona v. Gant*, ── U.S. ──, ──, 129 S.Ct. 1710, 1714, 173 L.Ed.2d 485 (2009) (permitting evidence-gathering search-incident-to-arrest in vehicle context "when it is reasonable to believe that *evidence of the offense of arrest* might be found in the vehicle") (emphasis added); maj. op. at 961 (making the *Gant* determination despite the fact that "[t]he charge underlying the warrant is not named in the record"). At the time that the suppression hearing was

---

**4.** In cases where the defendant admits he would have confessed regardless of the illegal search, or where he initiated a later police encounter during which the confession was given, the confession need not be suppressed. LaFave, *supra*, § 11.4(c). Neither situation applies here.

conducted in this case—long before *Gant* was issued—the propriety of the arrest could be assessed without knowing the offense of arrest because, as this court had recognized (wrongly, according to *Gant*), a search of the vehicle incident-to-arrest was "automatic[ally]" permissible regardless of the circumstances of arrest. *People v. Kirk*, 103 P.3d 918, 922 (Colo.2005). By contrast, the evidence-gathering rationale of *Gant* holds that the validity of a search-incident-to-arrest in the vehicle context is dependent upon the offense of arrest. *People v. McCarty*, 229 P.3d 1041, 1043–44 (Colo.2010). In my view, we should remand this case to the district court so that it may determine the offense of arrest, and whether it was "reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Gant*, —— U.S. at ——, 129 S.Ct. at 1714.

In addition, I disagree with the majority's conclusion that Perez has standing to challenge the search of the locked glove compartment in this case. Maj. op. at 961–62. Perez told the officers that he did not know the combination of the lock on the glove compartment, that he had no access to the compartment, that he had never accessed the compartment, and that he could not consent to a search of the compartment because he was not the owner of the car. Having disclaimed any interest in the locked glove compartment, Perez cannot now challenge the search of the compartment.

In sum, because the majority determines that the search was invalid under *Gant* without having the information necessary to make that determination under *Gant*, and because Perez lacks standing to challenge the search of the locked glove compartment, I respectfully dissent from the majority's opinion.

### I.

The majority recognizes that the record is silent with regard to the offense of arrest in this case. Maj. op. at 961. Yet it finds that this gap in the record does not keep it from invalidating the search because Perez was arrested "on [an] outstanding warrant," *id.* at 959, and "[t]he record ... gives no reason to believe that there was any 'articulable suspi-

cion' that evidence of a crime relevant to the previously-issued arrest warrant would be found in Perez's vehicle at the time of arrest," *id.* at 961. The fact that the record is silent on whether there was a connection between the warrant and the vehicle is not surprising given that the record is silent on the charge underlying the warrant. Neither fact was particularly important at the suppression hearing; under the law in place at the time, "[t]he authority to search a vehicle's passenger compartment incident to the arrest of an occupant *[wa]s automatic and d[id] not depend on the facts of a particular case.*" *Kirk*, 103 P.3d at 922 (emphasis added). In other words, at the time of the suppression hearing, our caselaw made it crystal clear that the search was "automatically" permissible regardless of what the crime of arrest was, and regardless of whether the vehicle was somehow connected to it. And that is precisely what the trial court held in this case. The majority thus invalidates the search based on the fact that the People failed to develop a record on an issue that was not relevant at the time. Under these circumstances, we should remand the case for the development of a proper record. *Murphy v. State*, 32 So.3d 122, 126 (Fla.Dist. Ct.App.2009) (remanding for a new suppression hearing where evidence regarding the crime of arrest was insufficient to determine whether search was proper under *Gant*); *see also State v. Harris*, 154 Wash.App. 87, 224 P.3d 830, 836 (2010) (remanding for an evidentiary hearing to determine if other warrant exceptions may apply under *Gant*); *Kollie v. State*, 301 Ga.App. 534, 687 S.E.2d 869, 880 (2009) (remanding for a hearing to determine whether search was proper under *Gant*).

The majority concludes—again with no record support—that "the evidence that led to Perez's arrest (the outstanding warrant) had no connection to the vehicle driven by Perez." Maj. op. at 961. But it is again difficult to see how the majority makes such a conclusion given the undeveloped state of the record on this issue. What the majority may be saying is that when a defendant is arrested on a warrant, *by definition* there can be no reason to believe that evidence of

the offense of arrest might be found in the vehicle under *Gant.* The majority thus seems to be imposing a contemporaneous observation requirement under which an officer cannot perform a search-incident-to-arrest unless she has witnessed the (non-traffic [5]) crime for which she arrested the defendant. *See* maj. op. at 961 (emphasizing that "[t]he officer learned about the outstanding warrant by accessing electronic records in his police car"). But there simply is no justification—in *Gant* or elsewhere—for a per se rule against *Gant* evidence-gathering searches when the defendant has been arrested on a warrant. For example, a defendant might be arrested on a warrant for motor vehicle theft, drug trafficking, or "threatening to kill [someone]," *Megginson v. United States,* — U.S. ——, 129 S.Ct. 1982, 173 L.Ed.2d 1288 (2009) (Alito, J., dissenting from denial of certiorari)—all of which could have some connection with a vehicle the defendant was driving at the time of the arrest. Again, in my view, a remand is appropriate in this case so that the People may develop a record on these issues.

## II.

I would also find that Perez lacks standing to challenge the search of the locked glove compartment. The majority dismisses the People's standing argument, finding that because Perez had a possessory interest in the car generally and "the officers could not access the glove compartment without first gaining access to the car itself, the police could not lawfully access the glove compartment." Maj. op. at 962. However, while possessory interest of an area or item is one factor to consider in determining an individual's standing to protest a search, *People v. Naranjo,* 686 P.2d 1343, 1345 (Colo.1984), the question at the heart of the standing inquiry remains whether a given individual "had a legitimate expectation of privacy in the *particular areas of the automobile searched,*" *Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (emphasis added). Because the facts of this case suggest that Perez had no legitimate expectation of priva-

cy in the locked glove compartment and, furthermore, expressly disclaimed any interest, I would find that he lacks standing to challenge the search of the compartment.

We have previously noted that a defendant "may challenge the constitutional validity of a search only if he has 'a legitimate expectation of privacy in the invaded place.'" *People v. Savage,* 630 P.2d 1070, 1072 (Colo.1981) (quoting *Rakas,* 439 U.S. at 143, 99 S.Ct. 421). In determining whether a defendant possesses a legitimate expectation of privacy, courts consider, "among other factors, whether an individual has a possessory or proprietary interest in the areas or items which are the subject of the search." *Naranjo,* 686 P.2d at 1345 (citing *Rakas,* 439 U.S. at 148, 99 S.Ct. 421). More generally, however, "[t]he question is whether the defendant demonstrates a sufficient connection to the areas searched or the items seized based on the totality of the circumstances." *People v. Curtis,* 959 P.2d 434, 437 (Colo.1998).

In this instance, the majority concludes that Perez's general possessory interest in the vehicle at the time of search grants him standing to protest search of any part of the vehicle. Maj. op. at 961–62. However, such a broad view of the issue fails to consider specific facts in the record establishing that Perez lacked any legitimate expectation of privacy in the locked glove compartment and, additionally, expressly disclaimed any possessory interest he may have had in it. Specifically, Perez noted that the car belonged to a friend of his girlfriend, and that he was driving it for only a short distance. The glove compartment was visibly locked, and Perez told the officers that he did not know the combination of the lock, had no access to the compartment, and had never accessed the compartment. He also stated that he did not know what was in the compartment and that the drugs found in it were not his. Moreover, Perez told the officers that he could not consent to a search of the car or the locked glove compartment because he was not the owner.

The facts of this case establish that as the non-owner driver of the car, Perez did not

---

**5.** *Gant* makes clear that for traffic offenses there will be no reason to believe that evidence of the crime of arrest might be found in the vehicle. *Gant,* — U.S. at ——, 129 S.Ct. at 1720.

have any legitimate expectation of privacy in a locked glove compartment that was inaccessible to him. *See State v. Martin*, 892 S.W.2d 348, 352 (Mo.Ct.App.1995) (holding that non-owner driver, even if driving with owner's consent, did not have a reasonable expectation of privacy in the glove compartment where he "testified that he had driven the car only once, that he had no knowledge of, or interest in, the drugs found in the glove compartment, and that he did not have access to the locked glove compartment because he did not know where the key was"). Additionally, any interest that Perez might have had in the locked compartment was expressly disclaimed by his statements that he did not have the combination to the lock on the glove compartment, had no access to the compartment, had never accessed the compartment, and could not consent to a search of the compartment. *Cf. People v. Thorpe*, 40 Colo.App. 159, 570 P.2d 1311, 1316 (1977) (holding that defendant lacked standing to protest a search of a truck where he previously denied having any interest or control over the truck or its contents); *State v. Hurlbert*, 351 Mont. 316, 211 P.3d 869, 874 (2009) (holding that defendant "waived his right to object to the search of the vehicle when he disclaimed that he had authority to grant permission to search it, and he thereby conceded that he did not have a reasonable expectation of privacy in the vehicle"). Whatever general possessory interest Perez had in the car was thus specifically limited by his own statements regarding his lack of interest in the locked glove compartment.

The majority believes that "the police could not lawfully access the glove compartment" because they could not gain any access to the car itself. Maj. op. at 962. Yet the police could lawfully access the compartment if (as I believe) Perez disclaimed any interest in it. There is simply nothing in the record to suggest that Perez disclaimed an interest in the locked glove compartment but somehow retained an interest in controlling access to the compartment. Because Perez disclaimed any interest in the compartment, he lacks standing to object to a search of the compartment.

### III.

Because the majority determines that the search was invalid under *Gant* without having the information necessary to make that determination under *Gant*, and because the defendant lacks standing to challenge the search of the locked glove compartment, I respectfully dissent from the majority's opinion.

I am authorized to say that Justice COATS joins in this dissent.