22CA2280 Peo v Wertin 05-15-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA2280
Arapahoe County District Court No. 21CR1729
Honorable Ryan J. Stuart, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kevin Lee Wertin,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BERGER*
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Casey J. Mulligan, Alternate Defense Counsel, Boulder, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Kevin Lee Wertin, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree murder, conspiracy to commit first degree murder, first degree assault, conspiracy to commit first degree assault, and the lesser nonincluded offense of disorderly conduct.

¶ 2     Wertin contends that the district court erred by denying (1) his request to instruct the jury on the affirmative defenses of self-defense and defense of others and (2) his motion to suppress statements that he made to the police during an interrogation.  He also contends that the cumulative effect of these errors deprived him of a fair trial.

¶ 3     We address and reject each of these contentions and therefore affirm the judgment of conviction.

## I.     Facts and Procedural History

¶ 4     On July 31, 2021, Emily Strunk called 911 to report that she had shot someone in the head at her apartment.  Upon arriving at the scene, officers found Strunk outside with "a couple pairs of brass knuckles" and "one 9mm round of ammunition" in her pockets.  Inside the apartment, officers discovered the victim — later identified as Strunk's neighbor and former romantic

1

partner — lying on the floor struggling to breathe and found a gun on the counter in the bathroom.

¶ 5     Surveillance footage from Strunk's apartment complex, recorded just before the shooting, showed the victim leaving his adjacent apartment while Wertin entered the hallway from Strunk's unit and intercepted the victim as he walked by.  Wertin, who was holding what appeared to be a pair of brass knuckles, followed the victim to a stairwell where the two had a brief exchange before the victim turned around with Wertin and followed him back into Strunk's apartment.  The video further depicts Wertin fighting with the victim in Strunk's doorway.  Wertin appeared to pull the victim into Strunk's apartment while the victim resisted.  The two men struggled on the floor just inside the door of Strunk's apartment, while Strunk stood over the two men, pointing a gun at the victim's head.  Strunk then fired the gun, shooting the victim in the head.

¶ 6     After the police arrived, the victim was rushed to the hospital for emergency surgery to remove bullet fragments from his skull. The victim ultimately survived, with grave disabilities.

¶ 7     Wertin was not at the apartment when the police responded to Strunk's 911 call, but Strunk told the police that he was present at the time of the shooting.

¶ 8     Wertin was arrested and charged with the crimes of which he was later convicted. During a custodial interrogation with two investigators, Wertin claimed that the victim was "terrorizing" Strunk and Wertin in the lead-up to the incident. He also said that, at the time he was seen fighting with the victim in the apartment complex's surveillance footage, he only used physical force to "keep [the victim] from breaking in." However, several text and voice messages sent between Wertin and Strunk in the days leading up to the shooting revealed that the two were angry with the victim and had discussed killing him.

¶ 9     After a three-day trial, the jury found Wertin guilty of attempted first degree murder, conspiracy to commit first degree murder, first degree assault, conspiracy to commit first degree assault, and the lesser nonincluded offense of disorderly conduct. The district court sentenced Wertin to forty years in the custody of the Department of Corrections.

## II. Affirmative Defenses

¶ 10     Wertin first contends that the district court erred by rejecting his tendered jury instruction on the affirmative defenses of self-defense and defense of others and, as a result, allowed the prosecution to convict him based on a standard of proof lower than what the law requires.  We disagree.

### A. Preservation and Standard of Review

¶ 11     Although Wertin initially argued in this court that he preserved this contention at trial, the People argue, Wertin concedes in his reply brief, and we agree that he did not.

¶ 12     Because the arguments that Wertin made at trial in support of his tendered self-defense and defense of others jury instruction are materially different from those he now offers on appeal, he did not preserve this claim of error.  As a result, we will reverse only if the unpreserved instructional error constitutes plain error.  *See Hagos v. People*, 2012 CO 63, ¶ 14; *People v. Sa'ra*, 117 P.3d 51, 54 (Colo. App. 2004) ("Defendant objected to the escape instruction at trial on grounds different from those he now complains of on appeal. Therefore, we review his contention for plain error.").

¶ 13    Plain error is an error that is both obvious and substantial. *Hagos*, ¶ 14. An error is obvious if the act or omission challenged on appeal contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *People v. Walker*, 2022 COA 15, ¶ 68. An error is substantial if it so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *Id.* at ¶ 28.

## B.    Applicable Law

¶ 14    "Taken together, the Fifth Amendment Due Process Clause and the Sixth Amendment guarantee of a trial by jury" preclude a defendant from being convicted unless a jury finds the defendant "guilty of having committed every element of the crime with which he has been charged." *Sanchez v. People*, 2014 CO 29, ¶ 13.

¶ 15    Affirmative defenses generally "seek to justify, excuse, or mitigate the commission of the [charged] offense." *People v. Mullins*, 209 P.3d 1147, 1149 (Colo. App. 2008). If the evidence presented at trial properly raises the issue of an affirmative defense, the affirmative defense "effectively becomes an additional element of the charged offense, and the trial court must instruct the jury that the prosecution bears the burden of proving beyond a reasonable doubt

5

that the affirmative defense is inapplicable." *Roberts v. People*, 2017 CO 76, ¶ 22; *see id.* at ¶ 18 (trial courts have a duty to instruct the jury on all matters of law applicable to the case). When the jury is instructed on an affirmative defense, "the prosecution must disprove beyond a reasonable doubt at least one of the conditions of the affirmative defense." *People v. Harrison*, 2020 CO 57, ¶ 34.

¶ 16    A defendant asserting the affirmative defense of self-defense "admits that his use of force satisfies the elements of the charged offense" but then contends that "the otherwise unlawful use of physical force was justified because it was reasonably necessary to defend himself or another from the victim's use or imminent use of force." *People v. Tardif*, 2017 COA 136, ¶ 37; *see* § 18-1-704, C.R.S. 2024. "[B]ecause self-defense justifies the use of physical force, it can be an affirmative defense only to crimes of physical force." *Tardif*, ¶ 37. Accordingly, self-defense is not an affirmative defense to crimes of conspiracy, as none of the elements of the crime require the use of physical force. *Id.* at ¶ 38.

¶ 17    Wertin was convicted of the crimes of attempted first degree murder and first degree assault on a complicity theory. Under this

6

theory, a defendant "is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." § 18-1-603, C.R.S. 2024.

¶ 18    To convict a defendant on a theory of complicity, the prosecution takes on the added burden of proving that "(1) the principal committed the crime; (2) the complicitor knew that the principal intended to commit the crime; and (3) the complicitor, having the requisite knowledge, aided, abetted, or encouraged the principal in the commission of the crime." *People v. Theus-Roberts*, 2015 COA 32, ¶ 35.

### C.    The District Court Did Not Commit Plain Error When It Failed to Sua Sponte Instruct the Jury on Self-Defense as to Strunk's Criminal Liability

¶ 19    Wertin contends that, (1) because there was evidence to support an argument that *Strunk* used physical force against the victim to defend herself or others, and (2) because Wertin was prosecuted under the theory of complicity, he was entitled to an affirmative defense instruction on self-defense or defense of others in regard to Strunk's use of physical force. He argues that, by not

7

giving such an instruction, the district court permitted the jury to convict Wertin on a lower burden of proof than what the law requires. We reject this argument.

¶ 20 As noted above, Wertin concedes in his reply brief that plain error review applies to his claim that the court erred by not instructing the jury that Strunk (not Wertin) was entitled to a self-defense or defense of others affirmative defense instruction.

¶ 21 This concession permits us to sidestep the perhaps difficult issues that would have been presented had this claimed error been preserved. In other words, even if we assume, without deciding, that the court had erred in failing to give, sua sponte, an affirmative defense instruction as to *Strunk's* shooting of the victim, it did not commit plain error by failing to do so.

¶ 22 A division of this court has rejected the proposition that a defendant charged with conspiracy is entitled to a self-defense instruction. *Tardif,* ¶ 38. Wertin concedes in his reply brief that "the affirmative defenses of self-defense and defense of others are inapplicable to the offense of conspiracy."

¶ 23 But the complicity theory of criminal liability is materially different than the theory of criminal conspiracy. Wertin's argument

is essentially as follows: To convict on a complicity theory, the jury must find that the principal committed the offense of which the defendant is accused of being complicit. *Theus-Roberts*, ¶ 35. If the government does not disprove an affirmative defense as to which the principal actor is entitled, such as self-defense, the principal arguably has not committed the offense, and an essential element of complicity liability is negated.

¶ 24 But Wertin does not cite, nor are we aware of, any authority that requires a self-defense instruction as to the actions of the principal, not the complicitor. The absence of any authoritative case law, a statute governing the situation, or generally accepted legal principles clearly applying to this situation is fatal to finding obviousness and thus plain error. *See Walker*, ¶ 68.

¶ 25 Not only is there no authority that would support a finding of obviousness, but the only published Colorado case on point, *People v. McCoy*, 944 P.2d 584 (Colo. App. 1996), also at least suggests that no such affirmative defense instruction is necessary or appropriate. In *McCoy*, the division said, "Under the circumstances here, it is no defense to the crime charged under a complicity theory

9

or to the crime of conspiracy that the person with whom the defendant acted is legally not responsible for the crime." *Id.* at 588.

¶ 26 Admittedly, as Wertin contends, the facts of *McCoy* are distinguishable from those presented in this case. And the *McCoy* division did not suggest when its rule would not apply. But, viewed through the lens of plain error review, *McCoy* provides no support for a finding of plain error here. If anything, *McCoy* casts substantial doubt on whether a trial court's failure to give a self-defense instruction as to the principal's conduct constitutes error, much less plain error.

¶ 27 Accordingly, we conclude that the district court did not commit plain error by failing to sua sponte instruct the jury that *Strunk's* criminal liability was subject to a self-defense or defense of others instruction.

¶ 28 Wertin's related argument that he was entitled to a theory of defense instruction that encapsulated his affirmative defense of self-defense is equally unavailing. *See People v. Garcia*, 28 P.3d 340, 347 (Colo. 2001). Once again, the grounds he offered for the instruction at trial are materially different from those he argues here.

¶ 29    In essence, Wertin claims that the district court erred by not providing a theory of the case instruction that his attorney did not request.  However, because Wertin's theory of defense at trial was different than that argued on appeal, the district court did not err by failing to sua sponte give the jury a theory of defense instruction not requested by his counsel.  *See Hansen v. State Farm Mut. Auto. Ins. Co.,* 957 P.2d 1380, 1384 (Colo. 1998) (the court's general duty to instruct the jury does not require it to craft theory of the case instructions that are not supported by competent evidence in the record and are not requested by defense counsel).

### III.    Suppression of Evidence

¶ 30    Wertin next contends that the district court erred by denying his motion to suppress certain statements that he made to the police during a custodial interrogation after he allegedly invoked his right to counsel.  We disagree.

### A.    Relevant Facts

¶ 31    Wertin was arrested and interrogated by the police.  At the beginning of the interrogation, an officer advised Wertin of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966).  Roughly

11

halfway through the lengthy interrogation, the following exchange

took place:

> INVESTIGATOR: Alright.  So we've (laugh),
> we've just made a big jump, from you guys
> are . . . .

> WERTIN: That's all I'm gonna say —

> INVESTIGATOR: Well, hear me out . . . we've
> made this jump, from, you're in the hallway —

> WERTIN: That's all I'm gonna say.

> INVESTIGATOR: To, she shoots him.

> WERTIN: That's fine . . . I want a lawyer,
> 'cause (sniff) . . . I didn't expect all that to
> happen, I thought it would just be a fight, that
> situation, that's a huge . . . from or something
> like that, man.

> INVESTIGATOR: Kevin, when you went
> outside, did you know [the victim] was out
> there?

> WERTIN: Huh-uh.

The interrogation continued for another forty-five minutes.  The

entire interrogation was audio- and video-recorded.

¶ 32     Wertin moved to suppress all statements he made to the police

after he allegedly asserted his right to counsel.  At a hearing on

Wertin's motion, the investigators who interrogated Wertin testified

that they did not hear his request for counsel during the interrogation. The district court credited the investigators' testimony and specifically found that "law enforcement, in fact, did not hear the statement."

¶ 33    In further support of its order denying the motion to suppress, the court said, "[G]iven that it was such a quiet request for a lawyer . . . and that Mr. Wertin kept asking — kept answering questions after, . . . that request for an attorney was not an unequivocal request on the part of Mr. Wertin." The court explained that "a request for an attorney has to be loud enough for law enforcement to hear" and that Wertin's whispered and mumbled request did not meet that standard.

¶ 34    In light of the district court's ruling, the prosecution introduced the entire recording of Wertin's interrogation at trial, including his statements after his claimed invocation of the right to counsel.

B.    Applicable Law and Standard of Review

¶ 35    The Supreme Court's holding in *Miranda* established that "an accused has the right under the Fifth Amendment to the United States Constitution to have an attorney present during custodial

13

interrogation." *People v. Kutlak*, 2016 CO 1, ¶ 14 (citing *Miranda*, 384 U.S. at 444, 469-73).  While the accused must be informed of this right before law enforcement initiates custodial questioning, *see Miranda*, 384 U.S. at 467-68, police officers are free to question the accused if the accused knowingly and voluntarily waives his right to counsel after receiving the required *Miranda* warnings. *Kutlak*, ¶ 14 (citing *Davis v. United States*, 512 U.S. 452, 458 (1994)).

¶ 36     In *Edwards v. Arizona*, the Supreme Court further held that if an accused invokes his right to have counsel present during custodial interrogation, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  451 U.S. 477, 484-85 (1981); *see Kutlak*, ¶ 14.  The applicability of the *Edwards* rule, however, "hinges on whether the accused actually invoked his right to counsel, which is an objective inquiry." *Kutlak*, ¶ 15.

¶ 37     At a minimum, the invocation of the *Miranda* right to counsel requires "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis*,

14

512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)).  In determining that the accused sufficiently invoked his right to counsel, the court must find that the accused "unambiguously request[ed] counsel," meaning "he . . . articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*; *see Kutlak*, ¶ 24.

¶ 38     To make this determination, the Colorado Supreme Court directs trial courts to consider the totality of the circumstances, including such factors as (1) the words spoken by the interrogating officer; (2) the words used by the accused in referring to counsel; (3) the officer's response to the accused's reference to counsel; (4) the speech patterns of the accused; (5) the demeanor and tone of the interrogating officer; (6) the accused's behavior during interrogation; and (7) the accused's youth, criminal history, background, nervousness or distress, and feelings of intimidation or powerlessness.  *Kutlak*, ¶ 24.  Critically, "unless the suspect's statement is an unambiguous and unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at ¶ 17.

¶ 39 A district court's ruling on a motion to suppress evidence presents a mixed question of fact and law. *People v. Kessler*, 2018 COA 60, ¶ 16. We defer to the district court's factual findings if they are supported by competent evidence in the record, but we review the legal effect of those facts de novo. *Perez v. People*, 231 P.3d 957, 960 (Colo. 2010).

### C. The District Court Did Not Err by Denying Wertin's Motion to Suppress

¶ 40 Wertin contends that the "totality of circumstances show that [he] invoked his right to counsel," and as a result, the district court erred by admitting the statements he made after he invoked his right to counsel.

¶ 41 Because a district court's ruling on a motion to suppress evidence presents a mixed question of fact and law, on review, we defer to the district court's factual findings if they are supported by competent evidence in the record. *Perez*, 231 P.3d at 960. The district court made explicit findings that the two investigators who interrogated Wertin "in fact, did not hear the statement." "[G]iven that it was such a quiet request for a lawyer," the district court

16

concluded that Wertin's "request for an attorney was not an unequivocal request on the part of Mr. Wertin."

¶ 42    While the district court did not explicitly ground its ruling in the objective standard and factors articulated by the Supreme Court and Colorado case law, the court implicitly applied the law set down by those courts, when it found that Wertin's "quiet" and mumbled request for counsel was not an unequivocal request for counsel.

¶ 43    The district court's factual finding that the investigators "in fact, did not hear" Wertin's invocation for counsel is supported by the record and we must defer to that finding. *See People v. Minjarez*, 81 P.3d 348, 353 (Colo. 2003) ("[W]e will defer to a trial court's findings of historical fact and credibility findings so long as they are supported by competent evidence in the record.").

¶ 44    While Wertin's statement, "I want a lawyer," facially appears to be a request for counsel, even facially clear statements must be articulated "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. As the district court observed and our independent review of the recording confirms, Wertin

17

repeatedly mumbled his words, and many of his statements — including the claimed invocation of the right to counsel — are barely discernible, even after multiple viewings (much less in real time).

¶ 45 Based on our own evaluation of the recording as well as the district court's factual findings, we conclude that the district court did not err when it ruled that Wertin did not sufficiently invoke his right to counsel. Thus, the district court properly denied Wertin's motion to suppress.

## IV. Cumulative Error

¶ 46 Wertin contends that the district court committed multiple errors, entitling him to reversal based on the cumulative error doctrine.

¶ 47 "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not. Stated simply, cumulative error involves cumulative prejudice." *Howard-Walker v. People*, 2019 CO 69, ¶ 25 (citation omitted).

¶ 48    We have implicitly assumed one error but found it not obvious.  Cumulative error requires multiple errors, so even if there was a single error, it was insufficient to implicate the cumulative error doctrine.  Therefore, there was no cumulative error.

## V.    Disposition

¶ 49    The judgment of conviction is affirmed.

JUDGE J. JONES and JUDGE YUN concur.