2015 COA 92

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Robert Keith RAY, Defendant–Appellant.

Court of Appeals No. 12CA0263

Colorado Court of Appeals,
Div. I.

Announced July 16, 2015

Cynthia H. Coffman, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Katherine C. Spicer, P.C., Katherine C. Spicer, Colorado Springs, Colorado, for Defendant–Appellant

Opinion by JUDGE TAUBMAN

¶ 1 Defendant, Robert Keith Ray, appeals the order dismissing his Crim. P. 35(c) motion for postconviction relief. On appeal, he maintains that ineffective assistance of trial and appellate counsel entitles him to a new trial on the charge of Possession of a Weapon by a Previous Offender (POWPO).

¶ 2 Ray is on death row after having been convicted of first degree murder in a separate case. His POWPO conviction was used as an aggravating factor in determining his death sentence, and the Colorado Supreme Court has not yet heard an appeal in the capital case. Assuming without deciding that heightened scrutiny applies to his claims, we conclude that the trial court did not err when it dismissed Ray's Crim. P. 35(c) motion. Therefore, we affirm.

## I. Background

¶ 3 In July 2004, Ray was on probation after having been adjudicated a delinquent on controlled substances and motor vehicle theft charges. Officers on a routine patrol followed Ray after they observed him continue straight through an intersection while in a left turn lane. As they followed him, officers observed Ray exceed the speed limit, play loud music, and drive recklessly. Ray came to a stop after officers activated their overhead lights. When they approached the car and ordered Ray to get out, he did not comply.. Ray remained seated and at one point appeared to drop his arm as if reaching for something. Officers pulled Ray from the car, placed him under arrest, handcuffed him, and put him in the back of a patrol car.

¶ 4 One officer searched the passenger compartment of Ray's car and discovered a BB gun. Another officer noticed that the driver side door panel was loose and, after removing the panel, discovered a firearm.

### A. Trial and Appeal

¶ 5 Ray was charged with POWPO. Before trial, defense counsel filed a motion to suppress evidence of the firearm, claiming that officers lacked reasonable suspicion to stop Ray, did not have probable cause to search the vehicle, and that the search was

not a valid search incident to arrest. The trial court disagreed. Relying on *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the court found that officers had reasonable suspicion to stop Ray, and that the search of the vehicle was a valid protective search for weapons.

¶ 6 In May 2008, a division of this court affirmed Ray's conviction. In November 2008, the Colorado Supreme Court denied Ray's petition for certiorari. The mandate was issued on November 25, 2008, and Ray did not petition the United States Supreme Court for certiorari.

¶ 7 In November 2011, Ray filed this Crim. P. 35(c) motion for postconviction relief, claiming that (1) appellate counsel should have filed a petition for certiorari in the Supreme Court; (2) trial counsel should have investigated whether others had driven Ray's car before the POWPO arrest; and (3) trial counsel should have asserted Ray's Second Amendment right to possess firearms for self-defense.[1] In a written order addressing each of his claims, the trial court denied his postconviction motion.

### B. Other Convictions

¶ 8 Ray was convicted of two other crimes related to events in 2004 and 2005.

¶ 9 First, in July 2004, Ray shot Elvin Bell several times and Javad Marshall–Fields twice during a confrontation at a free picnic and rap music contest in Lowry Park (the Lowry Park shooting). Bell's brother, Gregory Vann, was attempting to break up a fight when Ray's accomplice, Sir Mario Owens, shot and killed him. Ray then shot Bell and Marshall–Fields to facilitate Owens's escape. As a result, Ray was charged with and convicted of accessory to murder, two counts of attempted murder, and two counts of first degree assault. Those convictions were affirmed on appeal in January 2015. *See People v. Ray*, slip op. at 4–5, 2015 WL 339316 (Colo.App. No. 07CA0561, Jan. 22, 2015) (not published pursuant to C.A.R. 35(f)).

¶ 10 Second, Ray was convicted of first degree murder for the killing of Marshall–Fields, a key prosecution witness in Ray's accessory murder trial, and Vivian Wolfe, Marshall–Fields's fiancee. In June 2005, just days before Ray's accessory murder trial was set to begin, Owens, along with an associate, Parish Carter, shot and killed Marshall–Fields and Wolfe. Evidence established that Ray orchestrated the killings. As a result, Ray was convicted and sentenced to death for their murders.

### II. Crim. P. 35(c) Law and Standard of Review

¶ 11 A claim of ineffective assistance of counsel presents a mixed question of fact and law. *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo.2007). While we defer to the trial court's findings of fact, if they are supported by the record, we review legal conclusions de novo. *Id.*

¶ 12 Criminal defendants are constitutionally entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To prevail on a claim of ineffective assistance of counsel, defendants must show that (1) their counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Ardolino*, 69 P.3d at 76, *see also Silva v. People*, 156 P.3d 1164, 1168 (Colo.2007) (there exists a limited statutory right to postconviction counsel in Colorado for meritorious Crim. P. 35(c) motions).

¶ 13 Generally, "[t]he test for determining whether a defendant has received ineffective assistance of appellate counsel is the same as the test for ineffective assistance of trial counsel." *People v. Alexander*, 129 P.3d 1051, 1055 (Colo.App.2005). However, "the test will vary in its application, depending on the type of claim presented." *People v. Long*, 126 P.3d 284, 286 (Colo.App.2005). Claims of ineffective assistance of appellate counsel may stem from allegations that counsel failed to perfect an appeal or that, having perfected the appeal, counsel failed to present the case effectively by overlooking a meritorious argument that was more likely to

---

1. Ray's Crim. P. 35(c) motion included a fourth claim that trial and appellate counsel labored under a conflict of interest; however, he subsequently abandoned this claim.

succeed than the argument presented. *People v. Trujillo*, 169 P.3d 235, 238 (Colo.App. 2007).

¶ 14 Judicial scrutiny of defense counsel's performance is highly deferential, and we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Ardolino*, 69 P.3d at 76; *see, also Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. A reasonable investigation is one that is " 'sufficient to reveal potential defenses and the facts relevant to guilt.' " *People v. Newmiller*, 2014 COA 84, ¶ 45, 338 P.3d 459, 468 (quoting *Davis v. People*, 871 P.2d 769, 773 (Colo.1994)). In assessing the reasonableness of defense counsel's conduct, we must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

¶ 15 Ray argues that we should apply the heightened scrutiny applied in death penalty cases because his POWPO conviction served as an aggravating factor in the penalty phase of his subsequent capital case. Both the Colorado and United States Supreme Courts have recognized that "the death penalty is qualitatively different from any other punishment under the law," and require heightened reliability in capital cases. *Dunlap*, 173 P.3d at 1092; *see People v. Ray*, 252 P.3d 1042, 1049 (Colo.2011); *see also Mills v. Maryland*, 486 U.S. 367, 376, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) ("In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds."); *Zant v. Stephens*, 462 U.S. 862, 884–85, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)

("[B]ecause there is a qualitative difference between death and any other permissible form of punishment, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." (internal quotation marks omitted)); ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases § 1.1 (2003) (Guidelines refer to "high quality legal representation" because capital cases, including connected litigation, demand "a significantly greater degree of skill and experience" on the part of defense counsel than is required in noncapital cases).

¶ 16 Further, both courts have recognized that "[d]eath is a uniquely severe and irrevocable penalty, which requires the utmost scrutiny to the underlying verdict and sentence," and that "[p]ostconviction counsel in a death penalty case must continue an aggressive investigation of all aspects of the case." *Ray*, 252 P.3d at 1049 (internal quotation marks omitted); *see also California v. Ramos*, 463 U.S. 992, 998–99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) ("[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.").

¶ 17 However, Ray cites no authority supporting his assertion that noncapital cases should be treated as capital cases when convictions in the former serve as aggravating factors in the latter. Further, we recognize that another division of this court considered and rejected an identical argument during the direct appeal of Ray's conviction in the Lowry Park shooting. *See Ray*, No. 07CA0561, slip op. at 4–5. Further, Ray has not explained how heightened scrutiny would apply to our review of his Crim. P. 35(c) motion, nor has he specified how our review here should differ from that in non-death penalty cases. Although the ABA Guidelines describe heightened duties for counsel in death penalty cases, they are not binding on counsel or courts. *See* ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases § 10.7 (observing that heightened sophistication and experience is required of trial counsel during

pretrial investigation in death penalty cases); *id.* at § 10.15.1 (outlining heightened duties of postconviction counsel in death penalty cases).

¶ 18 Although we agree that Ray's POW-PO conviction is inextricably related to his capital case where his death sentence presumably will be appealed, we hesitate to infer a rule that heightened scrutiny applies to noncapital cases that serve as aggravating factors in capital cases. Nonetheless, for the purposes of this opinion, we will assume that heightened scrutiny applies to our review of Ray's POWPO conviction, and, applying that standard, we conclude that he did not receive ineffective assistance of counsel. Although Ray has not specified how we should apply a heightened scrutiny standard, we will do so here by addressing all his contentions, even though, as noted below, we would otherwise not be required to do so.

¶ 19 *Strickland*'s prejudice prong requires a defendant to prove there is a reasonable probability that, but for his or her attorney's deficient performance, the result of the proceeding would have been different. *Ardolino*, 69 P.3d at 76. In making this determination, we ask whether "in view of all the circumstances, the deficient conduct so prejudiced the defendant as to substantially undermine the integrity of the appellate process." *People v. Valdez*, 789 P.2d 406, 410 (Colo.1990). "In this context, a reasonable probability means a probability sufficient to undermine confidence in the outcome." *Ardolino*, 69 P.3d at 76.

¶ 20 Finally, "a court deciding an ineffective assistance claim ... [need not] address both [the performance and prejudice] components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *see also Newmiller*, ¶ 30, 338 P.3d at 465.

## A. Failure to File a Certiorari Petition

¶ 21 Ray contends that appellate counsel rendered ineffective assistance by failing to file a certiorari petition with the United States Supreme Court. First, he asserts that his counsel's performance was deficient in this regard because the Supreme Court had recently granted certiorari in *Arizona v.*

*Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), a case that was factually and legally similar to his. Second, he claims that his counsel's failure to seek certiorari review prejudiced him because, had counsel ensured that the case remained on appeal until the Supreme Court's announcement of *Gant*, he would have benefitted from *Gant* and his conviction would have been reversed. We disagree.

¶ 22 Because the outcome of this case may affect the appeal of his death sentence, we apply heightened scrutiny to our review of defense counsel's effectiveness, and set forth several reasons for rejecting Ray's contentions. As discussed below, we conclude that Ray had no right to counsel to pursue a petition for certiorari review in the Supreme Court, and therefore his appellate counsel did not render ineffective assistance by failing to do so.

¶ 23 Because we conclude that Ray has not established that defense counsel's performance was deficient, we normally would decline to address the second prong of his ineffective assistance of counsel claim, prejudice. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("[A] court [need not] ... address both components of the inquiry if the defendant makes an insufficient showing on one."); *see also Newmiller*, ¶ 30, 338 P.3d at 465 (same). However, given the heightened scrutiny we apply, we also consider the prejudice prong of Ray's ineffective assistance of counsel claim, and conclude that he has not established any resulting prejudice.

### 1. Relevant Case Law

¶ 24 While Ray's direct appeal of his POW-PO conviction was pending before this court, in February 2008, the United States Supreme Court granted certiorari in *Gant*, to consider whether the Fourth Amendment requires police "to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured." 552 U.S. 1230, 128 S.Ct. 1443, 170 L.Ed.2d 274 (2008) (order granting petition

for certiorari). After the Colorado Supreme Court denied Ray's certiorari petition, the mandate was issued, and his time-period for filing for certiorari in the United States Supreme Court expired, *Gant* was announced in April 2009, overruling *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and holding that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant,* 556 U.S. at 351, 129 S.Ct. 1710.

### 2. *Strickland*'s Performance Prong

█ ¶ 25 Ray argues that his appellate counsel rendered ineffective assistance by failing to file a petition for certiorari with the United States Supreme Court. We disagree.

¶ 26 In *People v. Dunlap,* 124 P.3d 780, 797–98 (Colo.App.2004), a division of the court of appeals concluded that appellate counsel was not ineffective for failing to file a petition for a writ of certiorari to the Supreme Court. The division reasoned that because criminal defendants do not have a constitutional right to counsel to pursue applications for review in the Supreme Court, "a defendant cannot be deprived of the effective assistance of counsel by retained counsel's failure to file [a certiorari] application timely." *Id.* at 798.

¶ 27 We recognize that, at the time, it would have been a reasonable strategic decision for Ray's counsel to have petitioned for a writ of certiorari: the Supreme Court had granted certiorari in *Gant,* a case that was factually and legally similar to Ray's; both Gant and Ray were arrested for driving-related offenses, evidence of which was unlikely to be found in their vehicles; both were handcuffed and locked in a patrol car when officers searched their vehicles; and both challenged the searches on the ground that they were not a threat to officers. *See Edwards v. People,* 129 P.3d 977, 983 (Colo. 2006) (new rules of constitutional law apply to all cases pending on direct review). Further, Ray faced murder charges in a related case, and the prosecution could, and did, use

the POWPO conviction as an aggravating factor in seeking the death penalty.

¶ 28 Although, under these circumstances, one could question defense counsel's decision not to petition for certiorari, counsel's failure to do so did not constitute ineffective assistance because Ray had no right to counsel to pursue such a petition. *See Dunlap,* 124 P.3d at 797–98.

¶ 29 Therefore, we conclude that Ray's counsel did not render ineffective assistance by failing to petition for certiorari review in the Supreme Court.

### 3. *Strickland*'s Prejudice Prong

█ ¶ 30 Even if we assume that Ray could establish deficient performance by his appellate counsel, his showing of prejudice is premised on several propositions that we find unpersuasive. Ray argues that, but for his counsel's failure to file a certiorari petition with the Supreme Court, his case would have remained on appeal when *Gant* was announced, the Supreme Court would have granted his certiorari petition, and his conviction would have been reversed based on *Gant.* We disagree.

¶ 31 First, Ray relies primarily on the procedural history of *Perez v. People,* 231 P.3d 957, 962 (Colo.2010). However, *Perez* is distinguishable because Perez's certiorari petition was pending before the Colorado Supreme Court when *Gant* was announced. As a result, defense counsel could and did file an amended certiorari petition, which the Colorado Supreme Court granted after *Gant* was announced. The supreme court then applied *Gant* and reversed Perez's conviction. *Id.* at 964. However, unlike in *Perez,* in Ray's case, *Gant* was announced after the Colorado Supreme Court had denied Ray's certiorari petition, the mandate had been issued, and his time period for filing certiorari in the United States Supreme Court had expired.

¶ 32 Ray contends that the Supreme Court would likely have granted certiorari, held his case in abeyance until after announcing *Gant,* and later vacated his conviction and remanded his case for further proceedings. However, in his Crim. P. 35(c) motion, Ray admitted that there was "very little chance"

that the Supreme Court would grant his certiorari petition. Further, even if we assume that the Supreme Court would have granted his petition, we do not know when it would have been granted or whether and when further proceedings would have occurred in the Supreme Court or in district court on remand. Such factors make it uncertain whether Ray would have prevailed.

¶ 33 Second, Ray's prejudice showing relies on the assumption that no alternative legal premise could justify the search of his vehicle or the admission of the firearm. As the postconviction court recognized, several legal doctrines could have precluded suppression of the firearm, including the independent source and the inevitable discovery doctrines. *See People v. Lewis,* 975 P.2d 160, 170 (Colo.1999) (independent source doctrine); *People v. Diaz,* 53 P.3d 1171, 1176 (Colo.2002) (inevitable discovery doctrine). Ray has not shown why these well-established exceptions to the exclusionary rule would not have precluded suppression of the firearm found in his car.

¶ 34 Third, on remand, the good faith exception to the exclusionary rule would have precluded suppression of the firearm. When officers searched Ray's vehicle, established Colorado and federal precedent, which *Gant* subsequently abrogated, permitted the police to search a vehicle incident to the lawful arrest of its occupant regardless of whether the occupant was within reaching distance of the passenger compartment. *See Perez,* 231 P.3d at 960–61 (observing that, before *Gant,* Colorado followed *Belton*'s "bright line test" that "if an occupant of a car was arrested, the passenger compartment of that vehicle could be searched"). However, in *Davis v. United States,* 564 U.S. 229, 131 S.Ct. 2419, 2433–34, 180 L.Ed.2d 285 (2011), the Supreme Court held that the exclusionary rule's good faith exception applied to searches like Ray's, which were made before *Gant* was decided. *See also People v. Hopper,* 284 P.3d 87, 90 & n. 3 (Colo.App.2011) (applying good faith exception established in *Davis* and holding that *Perez* was no longer good law in light of *Davis* ).

¶ 35 Therefore, even if we were to remand for a new trial or suppression hearing, *Davis*

and *Hopper* mandate that the good faith exception to the exclusionary rule would preclude suppression of the firearm because, when Ray was arrested, officers acted in good faith reliance on established precedent. *See People v. Ray,* slip op. at 2–6, 2008 WL 1970855 (Colo.App. No. 06CA2269, May 8, 2008) (not published pursuant to C.A.R. 35(f)) (Ray's pre-*Gant* direct appeal concluding that the search of Ray's car did not violate the Fourth Amendment).

¶ 36 Ray argues that, like *Strickland*'s deficient performance prong, prejudice should be determined under the law as it stood at the time of defense counsel's allegedly ineffective conduct. He points out that the *Gant* Court declined to address whether the good faith exception to the exclusionary rule would apply to searches made before *Gant* was decided, and that there was a two-year window between *Gant* and *Davis,* during which the exclusionary rule would have required suppression of the firearm. *See People v. McCarty,* 229 P.3d 1041, 1046 (Colo.2010) ("[W]e are reluctant to expand the good-faith exception to the Supreme Court's exclusionary rule beyond the limits set by that Court itself."); *Perez,* 231 P.3d at 962 ("Consistent with our holding in *McCarty,* we decline to apply a good faith exception to the officer's actions.").

[4] ¶ 37 However, as the Supreme Court has recognized, although *Strickland*'s deficient performance prong is governed by the law as it stood at the time of counsel's allegedly deficient performance, no such "contemporary assessment" is required for the prejudice prong. *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Rather, *Strickland*'s prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.; see also United States v. Baker,* 719 F.3d 313, 321 (4th Cir.2013) ("*Strickland*'s prejudice prong is governed by the law as it stands at the time a court is considering a defendant's ineffective-assistance claim, in contrast to the performance prong, which is governed by the law as it stood when the defendant's lawyer acted."); *People v. Tyus,* 355 Ill.Dec. 742, 960

N.E.2d 624, 638 (Ill.App.Ct.2011) (In a post-*Gant*, pre-*Davis* trial, counsel was not ineffective for failing to a file suppression motion, even if search violated *Gant*, because "the police were acting in reasonable reliance upon *Belton*."). Therefore, Ray's prejudice contention is undermined because, contrary to his assumption, on remand, the postconviction court would be required to apply *Davis*, and the good-faith exception to the exclusionary rule would therefore preclude suppression of the firearm found in Ray's car.

¶ 38 Accordingly, we conclude that Ray did not receive ineffective assistance of appellate counsel when his attorney failed to file a certiorari petition with the Supreme Court.

### B. Failure to Investigate

■ ¶ 39 Next, Ray contends that trial counsel rendered ineffective assistance by failing to investigate whether others had driven his car before the POWPO arrest. Specifically, he asserts that trial counsel was ineffective because he did not review police interviews related to the Lowry Park shooting, and therefore never learned that others had driven Ray's car within nine days prior to the POWPO arrest. We disagree.

¶ 40 The postconviction court found that this claim was raised and resolved in prior court proceedings and during Ray's direct appeal. *See* Crim. P. 35(c)(3)(VI) ("The court shall deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant...."). Because the trial court's finding is supported by the record, we discern no error.

¶ 41 After trial, Ray moved for a new trial, contending that the prosecution had failed to disclose a police interview of his wife which allegedly contained exculpatory evidence. Officers interviewed Ray's wife during the investigation into the Lowry Park shooting. During the interview, Ray's wife told officers that a friend had driven Ray's car to a barbeque around the time of the Lowry Park shooting, which was nine days before Ray's POWPO arrest. Ray argued that the statements were exculpatory because they showed that others had access to his car, corroborating his defense that someone else hid the firearm in the door panel, and that he did not know it was there.

¶ 42 The trial court concluded that the statements were immaterial and, on appeal, a division of this court affirmed, concluding that "the evidence of the wife's interview by the police was highly unlikely to have resulted in testimony that would have changed the outcome of the case." *Ray*, No. 06CA2269, slip op. at 12. Contrary to Ray's assertion that he was prejudiced by trial counsel's conduct, the division on direct appeal concluded that there was no reasonable probability that the result of the trial would have changed if evidence that other persons had driven the car had been admitted.

¶ 43 Therefore, we conclude that the postconviction court did not err in determining that this claim was raised and resolved on direct appeal.

### C. Second Amendment Affirmative Defense

■ ¶ 44 Finally, Ray contends that trial counsel rendered ineffective assistance by failing to investigate a potential affirmative defense based on his Second Amendment right to possess firearms for self-defense. We disagree.

¶ 45 The postconviction court noted that the decision to assert an affirmative defense is a strategic one, left to the sound discretion of defense counsel. It concluded that trial counsel's failure to assert Ray's Second Amendment rights did not constitute ineffective assistance because such a defense was not supported by the evidence and would have conflicted with Ray's theory of defense that he did not know the firearm was in his car. Because the court's finding is supported by the record, we again conclude that the trial court did not err.

¶ 46 At trial, Ray asserted that someone else placed the firearm in the side door compartment, and that he was unaware that it was in his car. A Second Amendment affirmative defense would have required Ray to admit that he knew the gun was in his car and argue that he carried it only to defend himself or his property. *See People v. De-Witt*, 275 P.3d 728, 733 (Colo.App.2011) ("[A]

defendant charged with POWPO may raise as an affirmative defense that he or she possessed a weapon for the constitutionally protected purpose of defending his or her home, person, or property."). Therefore, such an affirmative defense would have been inconsistent with Ray's theory of defense.

¶ 47 Accordingly, we conclude that trial counsel did not render ineffective assistance by failing to investigate the affirmative defense of Ray's Second Amendment right to possess firearms for self-defense.

### III. Conclusion

¶ 48 The order is affirmed.

JUDGE HAWTHORNE concurs.

JUDGE BERGER specially concurs

JUDGE BERGER specially concurring.

¶ 49 I write separately to note that I was a member of the division of this court that decided *People v. Ray*, 2015 WL 339316 (Colo.App. No. 07CA0561, Jan. 22, 2015) (not published pursuant to C.A.R. 35(f)). As the present division notes, the division in No. 07CA0561 rejected defendant's argument that, for purposes of appellate review, the same standard of review that applies in capital cases should be applied to non-capital cases when convictions in the latter serve as aggravating factors in the former.

¶ 50 Defendant makes the same argument in this case. While the present division "hesitates to infer a rule that heightened scrutiny applies to non-capital cases that serve as aggravating factors in capital cases," it nevertheless assumes that heightened scrutiny applies here and applies it.

¶ 51 While I fully understand the division's reasons for doing so, I would adhere to the determination made in No. 07CA0561 and apply the non-capital standard of review in the present case for two reasons. First, this is not a capital case and defendant has cited no authority providing that a non-capital case should be treated as a capital case when convictions in the former serve as aggravating factors in the latter. Second, the Colorado Supreme Court's most recent decision on the issue, by which we are bound, makes

clear that generally applicable standards of review apply even in capital cases. *See People v. Dunlap*, 975 P.2d 723, 737 (Colo.1999).

¶ 52 But, in any event, defendant has not suffered any prejudice from the application of the heightened standard because his ineffective of assistance of counsel claims have been reviewed under a standard more generous to him than what, in my view, the law prescribes.

¶ 53 With this minor reservation, I fully agree with the division's analysis of defendant's contentions and I join its opinion and disposition.