19CA2008 Peo v Akins 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA2008 Boulder County District Court No. 09CR1247 Honorable Bruce Langer, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Thomas Richard Akins, Defendant-Appellant. ORDER AFFIRMED Division VI Opinion by JUDGE FOX Welling and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Philip J. Weiser, Attorney General, Joseph G. Michaels, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee JLongtin Law, LLC, Jennifer E. Longtin, Robert Houton, Amelia Power, Mattson T. Smith, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Thomas Richard Akins, appeals the postconviction court’s order denying his Crim. P. 35(c) petition without a hearing. We affirm. I. Background ¶ 2 On July 12, 2009, Akins and N.E., who were longtime friends, visited a bar in Boulder where they drank beer and shots of liquor. They left the bar when it closed and went to Akins’ truck; they then sat in the backseat and talked while Akins sobered up enough to drive. At one point, Akins kissed N.E. and climbed on top of her. N.E. realized that her pants were off, but she could not recall how they had been removed. Akins then penetrated N.E. vaginally and anally. Afterwards, he cried and apologized, and then drove N.E. home. After discussing the incident with her partner, S.W., N.E. reported it to police, alleging that the sexual activity was not consensual. ¶ 3 Akins was arrested and charged with sexual assault (causing submission of the victim). A jury convicted him as charged. The trial court sentenced him to ten years to life of sex offender intensive supervision probation and ordered two years of work release as a condition of probation. His conviction was affirmed on 
2 appeal. See People v. Akins, (Colo. App. No. 12CA0199, Mar. 19, 2015) (not published pursuant to C.A.R. 35(f)). ¶ 4 On December 17, 2018, Akins filed a petition for postconviction relief pursuant to Crim. P. 35(c). Akins privately retained counsel to assist in the petition, and she filed a supplemental petition alleging that Akins’ trial counsel had been constitutionally ineffective. After the People filed a response at the postconviction court’s request, the court denied Akins’ petition without a hearing. II. Denial of Akins’ Petition Without a Hearing ¶ 5 Akins contends that the postconviction court erred by summarily denying his Crim. P. 35(c) petition. We disagree. A. Standard of Review and Applicable Law ¶ 6 A postconviction court may deny a Crim. P. 35(c) petition without a hearing if (1) the petition, files, and record clearly establish that the defendant is not entitled to relief; (2) the allegations, even if true, do not provide a basis for relief; or (3) the claims are bare and conclusory in nature. People v. Delgado, 2019 COA 55, ¶ 8. We review de novo such denial of a Crim. P. 35(c) petition. Id. at ¶ 7. 
3 ¶ 7 To prevail on an ineffective assistance of counsel claim, a defendant must show by a preponderance of the evidence that (1) counsel’s performance was constitutionally deficient, and (2) defendant was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); People v. Garcia, 815 P.2d 937, 940 (Colo. 1991); People v. Garner, 2015 COA 174, ¶ 17. Because a defendant must show both deficient performance and prejudice, a court may resolve an ineffective assistance claim solely on the basis that the defendant has failed in either regard. Strickland, 466 U.S. at 697; People v. Ray, 2015 COA 92, ¶ 20. ¶ 8 As to Strickland’s first prong, “a defendant must prove that counsel’s representation ‘fell below an objective standard of reasonableness.’” Dunlap v. People, 173 P.3d 1054, 1062 (Colo. 2007) (quoting Strickland, 466 U.S. at 688). “[J]udicial scrutiny of counsel’s performance must be highly deferential,” and there exists “a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Ardolino v. People, 69 P.3d 73, 76 (Colo. 2003). “[A] court must make ‘every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the 
4 conduct from counsel’s perspective at the time.’” Dunlap, 173 P.3d at 1062-63 (quoting Strickland, 466 U.S. at 689). ¶ 9 As for Strickland’s second prong, the defendant must show a reasonable probability that, but for counsel’s deficient performance, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Ardolino, 69 P.3d at 76. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694; Ardolino, 69 P.3d at 76. B. Analysis ¶ 10 Akins raised five distinct claims of ineffective assistance in his postconviction petition. We address the court’s summary denial of each claim in turn. 1. Failure to Investigate N.E.’s False Impersonation Charge ¶ 11 Shortly before trial, N.E. was arrested in California for driving on a suspended license. Because she gave the arresting officer a false name — apparently to avoid arrest on a 2005 Los Angeles County warrant — she was also charged with a false impersonation offense. N.E.’s partner, S.W., then contacted the Boulder County District Attorney’s office on her behalf to inform them that N.E. was 
5 in custody and to ask for assistance. The charges against N.E. were later dismissed. ¶ 12 According to Akins, trial counsel failed to further investigate the circumstances surrounding N.E.’s arrest. Specifically, he asserted that trial counsel’s failure “to secure any records of the arrest, the dismissal, or the Los Angeles County Warrant” amounted to constitutionally deficient representation that affected the outcome of his trial. He argues that the claim — as stated in his petition — warranted an evidentiary hearing. We disagree. ¶ 13 The record indicates that trial counsel had some of the records concerning N.E.’s arrest. In his petition, Akins stated that trial counsel had been made aware of the arrest; he clarifies on appeal that it was the prosecutor who disclosed the information. Though the record does not clearly show that the prosecutor gave trial counsel certified copies of N.E.’s arrest records, trial counsel indicated as much when arguing the admissibility of the incident to the trial court. For example, in recounting the incident, he alluded to a document in his possession that listed the specific name of the offense: “She was arrested for driving on a suspended license/DUI — and I have a printout I can show you — and a felony false — it’s 
6 called false impersonation, impersonating another.” And he followed that by stating, “As far as I can tell from the records, your Honor, she was arrested for driving on a suspended name.” ¶ 14 But even if trial counsel did not have official copies of the records, he was nonetheless aware of the pertinent information surrounding the incident. The record shows that he knew the factual circumstances underlying the arrest, including that N.E. had a suspended license and an outstanding warrant for her arrest; that he knew the specific offense for which N.E. was charged; and that he knew the extent of N.E.’s and S.W.’s communication with the Boulder County District Attorney’s office before the dismissal of the N.E.’s charges. It is unclear what further information would have been revealed if trial counsel had obtained the official records; indeed, Akins could only speculate in his petition, in part because the arresting agency disposed of the pertinent records in 2015. ¶ 15 Regardless, we conclude that Akins’ petition on its face did not establish prejudice under Strickland. ¶ 16 First, Akins alleged that trial counsel’s failure to investigate prejudiced him because trial counsel “asked several questions designed to require [N.E.] to answer negatively,” and “[w]ithout any 
7 reason to question [N.E.’s] credibility, these statements fell flat and far short of their goal of discrediting [N.E.].” But Akins did not identify any specific question that was subverted by trial counsel’s lack of investigation. See Delgado, ¶ 8 (a postconviction court may summarily deny a claim that is bare and conclusory in nature). Nor does he do so on appeal — he just generally cites to nearly sixty pages of N.E.’s cross-examination. In any event, the record indicates that trial counsel introduced ample other evidence undermining N.E.’s credibility, including N.E.’s inability to remember parts of the assault due to intoxication and inconsistencies in her statements to police and others. Moreover, the trial court instructed the jury that in assessing N.E.’s credibility, it could consider that N.E. deliberately violated its sequestration order by discussing her testimony with S.W. ¶ 17 Second, Akins asserted that trial counsel’s performance prejudiced him because the unobtained records “could have been important in establishing [N.E.’s] hope to gain a benefit in her California case due to her status as a victim in the matter” and “[n]o evidence of [N.E.’s] arrest, dismissal, or other related interactions with California’s criminal justice was introduced” which “would 
8 have tended to impeach [N.E.’s] credibility.” However, after trial counsel questioned N.E. in camera, the trial court found that N.E. was under no “impression that she gained any benefit from the Boulder County District Attorney’s Office,” and thus precluded trial counsel from impeaching N.E. with evidence concerning the dismissal of her charges — a ruling that was affirmed on appeal. Akins, No. 12CA0199. The court also ruled that while trial counsel could “inquire as to the fact that N.E. was dishonest to law enforcement on an occasion in order to avoid an arrest,” evidence of N.E.’s subsequent arrest and charges were inadmissible. So, even if the unobtained records included additional evidence as to N.E.’s arrest or the dismissal of her charges, the evidence would not have been admissible. ¶ 18 Third, Akins’ petition asserted that the records could have “more concretely establish[ed] a pattern of making untruthful statements to officers.” But he offered no explanation as to how the records could conceivably do so. Nor does he clarify on appeal. ¶ 19 In sum, then, Akins’ allegations of prejudice were clearly belied by the record or conclusory in nature. Accordingly, we 
9 discern no error in the denial of his claim without a hearing.
1 See Delgado, ¶ 8. 2. Failure to Effectively Cross-Examine N.E. ¶ 20 As noted above, the trial court permitted trial counsel to “inquire as to the fact that N.E. was dishonest to law enforcement on an occasion in order to avoid an arrest.” Yet trial counsel inadvertently forgot to do so when he cross-examined her. Realizing his mistake, he asked the trial court’s permission to ask N.E. about the incident on recross-examination. The trial court refused, and its ruling was affirmed on appeal. Akins, No. 12CA0199. ¶ 21 In his petition, Akins raised trial counsel’s mistake as grounds for ineffective assistance. He asserted that trial counsel’s deficient performance so undermined his ability to impeach N.E.’s credibility 1 Akins also claimed that trial counsel’s performance was deficient for failing to interview the California prosecutor assigned to N.E.’s case. However, because he does not reassert or otherwise address that claim on appeal, he has abandoned it. See People v. Osorio, 170 P.3d 796, 801 (Colo. App. 2007) (“[T]hose claims raised in defendant’s postconviction motion, but not reasserted here, have been abandoned on appeal.”); People v. Delgado, 2019 COA 55, ¶ 9 n.3 (“We deem abandoned, and won’t address, the seven claims that defendant raised in his Rule 35(c) motion but didn’t discuss on appeal.”). And regardless, the record indicates that trial counsel attempted to interview the prosecutor, and thus his performance was not deficient in that respect. 
10 that it met the standard for Strickland prejudice. However, as discussed above, the record shows that trial counsel was nonetheless able to competently challenge N.E.’s credibility and, additionally, the jury was instructed it could consider N.E.’s deliberate violation of the court’s sequestration order. Thus, in our view, the jury would not have had a significantly different impression of N.E.’s credibility had trial counsel impeached N.E. with evidence of the traffic stop. Accordingly, the record indicates that there was no reasonable probability trial counsel’s mistake affected the outcome of Akins’ trial, controverting Akins’ alleged claim of prejudice. Thus, denial without a hearing was appropriate. See Delgado, ¶ 8; Strickland, 466 U.S. at 694; Ardolino, 69 P.3d at 76. 3. Failure to Obtain Surveillance Footage ¶ 22 Akins’ petition alleged that at his first meeting with trial counsel, Akins recounted that he and N.E. had engaged in consensual intimate contact just before the assault. Specifically, he told trial counsel that when the two walked from the bar to his truck, they were kissing, hugging, and holding hands; he also 
11 speculated that there was surveillance footage along the route they walked that could corroborate his account of the events. ¶ 23 Akins’ petition further alleged that trial counsel “did not employ an investigator for several weeks” after their first meeting. And “[w]hen investigations did commence, one of the first steps the investigator took was to seek out video surveillance [of] the walk Mr. Akins took back to his car with N.E. . . . from the government building and the bank near where Mr. Akins parked.” However, “both locations had deleted their video footage, leaving it inaccessible to Mr. Akins’ defense team.” ¶ 24 Akins asserted that trial counsel’s failure to promptly seek out the surveillance footage constituted ineffective assistance. But his petition left unanswered a question pivotal to his claim: When, precisely, was the footage deleted? Indeed, Akins’ petition did not allege with any specificity that the footage was not yet deleted at the time he told trial counsel about its possible existence. And absent that allegation, Akins’ petition could not establish that trial counsel’s delay in pursuing the footage precluded him from obtaining it. Accordingly, the allegations in his petition, even if 
12 true, could not support a finding of Strickland prejudice. See Strickland, 466 U.S. at 694; Ardolino, 69 P.3d at 76. ¶ 25 Moreover, even if trial counsel could have obtained the footage, we discern no reasonable probability that doing so would have changed the outcome of the trial. Akins’ petition asserted that trial counsel’s performance “prevent[ed] him from presenting an alternative narrative to the States’ theory of the case.” But he did not explain how — or even allege that — the footage would have affected the jury’s decision, particularly where a witness testified to observing Akins and N.E. engaging in romantic behavior. Nor can we assume as much — even if N.E. displayed romantic or intimate behavior towards Akins, such behavior has no bearing on whether she subsequently consented to sexual activity. And the alleged footage as described in the petition would not challenge or conflict with N.E.’s account of the later conduct for which Akins was charged. ¶ 26 In sum, then, denial of the claim without a hearing was appropriate. Delgado, ¶ 8. 
13 4. Ineffective Voir Dire ¶ 27 Akins also claimed that trial counsel was ineffective for failing to challenge three jurors for cause at the close of voir dire: Jurors B, O, and W. Of the three, however, only Juror O ultimately sat on the jury; thus, trial counsel’s failure to challenge Jurors B and W could not have affected Akins’ conviction.
2 ¶ 28 Akins’ petition pointed out that Juror O “expressed reservations about [her] ability to be fair if [she] did not hear from Mr. Akins or the defense.” On appeal, Akins directs us to the following colloquy: [TRIAL COUNSEL]: You understand th[at] Mr. Akins is not compelled to offer any evidence at all, and that includes that he doesn’t have to testify. What if, in your mind, it’s he-said she-
said and you only get the she-said? Anybody going to have a problem with that[?] . . . [Juror O], you are nodding. What do you think about that? 2 The record is unclear as to whether trial counsel instead used peremptory challenges to remove Jurors B and W. If so, Akins did not allege that he was prejudiced by trial counsel’s choice to exercise peremptory challenges to remove the jurors rather than attempt to challenge them for cause. Thus, we do not address whether a potential loss of peremptory challenges prejudiced Akins. 
14 [JUROR O]: I think it would be very hard. It wouldn’t be hearing both sides. How do you make a decision hearing only one side? [TRIAL COUNSEL]: Well, do you think that because we are looking at these things differently than we do when resolving a dispute between friends or kids that this high burden that the prosecution has, that you could rest it solely on what they presented to you and say have they proved what they had to prove without hearing that other side? [JUROR O]: I don’t think so. . . . I think you have to hear both sides. You said an example of kids. I would never listen to just one and not the other one speaking before I make the decision. ¶ 29 A challenge for cause must only be sustained if a juror “evinc[es] enmity or bias toward the defendant,” § 16-10-103(1)(j), C.R.S. 2021 — that is, if “a potential juror’s statements compel the inference that he or she cannot decide crucial issues fairly,” People v. Merrow, 181 P.3d 319, 321 (Colo. App. 2007). See also People v. Oliver, 2020 COA 97, ¶¶ 8-9. Though Juror O indicated that she may have trouble reaching a verdict if Akins elected not to testify, she did not indicate that she would weigh his silence against him. Rather, she seemed to suggest that, absent testimony from Akins, she would not be able conclude that the People met their burden. 
15 Thus, if anything, her statements skewed favorably toward the defense; they did not suggest a bias towards Akins. ¶ 30 Moreover, even if her statements could be construed as evincing bias, the record indicates that she later affirmed her ability to impartially consider Akins’ case. See Merrow, 181 P.3d at 321 (Where a juror evinces bias, a challenge for cause need only be granted “in the absence of rehabilitative questioning or other counter-balancing information.”); Oliver, ¶ 7 (“When reviewing a challenge for cause, we examine the entire voir dire of the prospective juror.”). The trial court instructed the full venire that a defendant’s choice not to testify cannot be used as an inference of guilt and that the burden of proof rests solely with the People. It then asked the potential jurors to raise their hand if they could not follow those instructions — none did. Trial counsel followed by asking the full venire whether any juror would not be able to fairly judge Akins without hearing from him, and, again, no juror suggested such an inability. 
16 ¶ 31 Accordingly, we discern no basis to grant a challenge for cause to Juror O, and thus we cannot conclude that trial counsel’s failure to challenge Juror O prejudiced Akins.
3 ¶ 32 Akins further claims that trial counsel was ineffective for failing to challenge four other jurors, three of whom served on the jury: Juror St, Juror A, and Juror Sc. However, he raises this claim for the first time on appeal; though he alluded to these jurors in the factual background of his petition, he never asserted that trial counsel should have challenged them for cause. See People v. Goldman, 923 P.2d 374, 375 (Colo. App. 1996) (“Allegations not raised in a Crim. P. 35(c) motion . . . are not properly before this court for review.”). And in any event, when trial counsel directly questioned the three jurors during voir dire, each assured him that they could serve fairly and impartially despite trial counsel’s 3 Akins’ petition also alleged that other “unnamed” jurors similarly “expressed reservations about their ability to be fair if they did not hear from Mr. Akins or the defense.” He did not elaborate as to who those jurors were or indicate what specifically they said during voir dire that expressed bias towards him. Nor does he clarify on appeal. Thus, to the extent he raised a claim of ineffective assistance as to counsel’s failure to challenge these “unnamed” jurors, any such claim was too bare and conclusory in nature to warrant an evidentiary hearing. See Delgado, ¶ 8. 
17 concerns. See Oliver, ¶ 11 (“In determining whether a potential juror can set aside any preconceived notions and render an impartial verdict, the trial court may consider a juror’s assurances that he or she can serve fairly and impartially.”). ¶ 33 Akins’ petition additionally asserted — in conclusory fashion — that trial counsel’s failure to challenge the named jurors for cause left “their responses unpreserved as a potential error in the trial, all but eliminating the ability to raise the issue on appeal.” But to the extent he suggested that trial counsel’s performance deprived him of a possible claim on appeal, he offered no explanation as to why that claim would have been meritorious. Nor, as discussed above, do we perceive any basis for granting a challenge for cause that could support a claim on appeal. ¶ 34 In sum, Akins’ petition did not establish that trial counsel’s failure to challenge the named jurors prejudiced him under Strickland. Thus, we discern no error in the postconviction court’s denial of his claim without a hearing. Delgado, ¶ 8. 5. Failure to Adequately Advise Akins of His Right to Testify ¶ 35 Akins alleged in his petition that he elected not to testify on the advice of trial counsel, which, he asserted, was deficient in two 
18 respects. However, Akins failed to establish that either deficiency resulted in Strickland prejudice. ¶ 36 First, Akins alleged that trial counsel did not fully advise him of his right to testify pursuant to People v. Curtis, 681 P.2d 504 (Colo. 1984), and thus his waiver of that right was not voluntary, knowing, or intelligent such that it was constitutionally valid, see id. at 514-15 (waiver of the right to testify must be voluntary, knowing, and intentional). However, while trial counsel may have failed to sufficiently advise Akins, the record shows that the trial court gave Akins a full and proper Curtis advisement before he elected not to testify — a fact that Akins has not disputed below or on appeal. And Akins affirmed that he understood the court’s advisement; that he had sufficient time to consider his decision to waive his right to testify; and that his decision was made voluntarily. Because Akins was ultimately given a proper Curtis advisement before he elected not to testify, the record clearly belies that he suffered any prejudice from trial counsel’s failure to do so. ¶ 37 However, citing People v. Moronez-Quinonez, 2015 COA 161, Akins posits that “the misadvisement of counsel cannot be presumed to be cured by a separate advisement by the trial court.” 
19 True, the division in Moronez-Quinonez suggested as much, recognizing that “counsel’s affirmative misrepresentation cannot be cured by a court advisement as easily as counsel’s failure to advise.” Id. at ¶ 18. But Moronez-Quinonez concerned only an attorney’s advice regarding the immigration consequences of a guilty plea, not the right to testify. See id. at ¶ 5. Moreover, to the extent the division’s reasoning is equally applicable here, Akins did not allege that he was affirmatively misadvised — he only asserted that trial counsel failed to advise him. And “where a defendant contends that [his] counsel gave [him] no information” — as opposed to misinformation — “a court’s correct and complete advisement will generally neutralize counsel’s allegedly deficient performance.” Id. at ¶ 18. Thus, Akins’ reliance on Moronez-
Quinonez is misplaced. ¶ 38 Second, Akins alleged that trial counsel did not advise him as to “what evidence would be introduced against him and what evidence he would be able to introduce” if he took the stand; if trial counsel had, he alleged, he would have chosen to testify. But Akins did not allege in his petition what his testimony would have included or what evidence he would have introduced. Nor did he 
20 even allege that his testimony could have affected the outcome of his trial. Accordingly, his petition failed to sufficiently allege a reasonable probability that, but for trial counsel’s insufficient advice, the result of the trial would have been different. ¶ 39 Because the allegations in Akins’ petition, even if true, did not establish Strickland prejudice, denial of the claim without a hearing was proper. Delgado, ¶ 8. III. Compliance with Crim. P. 35(c)(3)(V) ¶ 40 Akins additionally contends that the postconviction court erred by failing to follow the procedures mandated by Crim. P. 35(c). Specifically, he appears to argue that because the court directed the People to respond to Akins’ petition, it was required to grant Akins an evidentiary hearing under Crim. P. 35(c)(3)(V). True, Crim. P. 35(c)(3)(V) provides that after a postconviction court orders a response, “the court shall grant a prompt hearing” on the defendant’s petition. But the rule qualifies that a hearing is not required if, “based on the pleadings, the court finds that it is appropriate to enter a ruling.” Id. Thus, even if a postconviction court orders a response from the People, the rule does not compel 
21 the court to hold an evidentiary hearing. Accordingly, we discern no violation of Crim. P. 35(c)(3)(V).
4 IV. Conclusion ¶ 41 The order is affirmed. JUDGE WELLING and JUDGE JOHNSON concur. 4 Relatedly, Akins appears to suggest that because the postconviction court ordered the People to respond instead of immediately dismissing his petition, it necessarily found that his claims warranted an evidentiary hearing. Thus, he argues, the court erred by summarily denying his petition. However, as noted, a postconviction court may deny a Crim. P. 35(c) petition without a hearing even after directing the People to respond to it. See Crim. P. 35(c)(3)(V). Ordering a response from the People does not equate to a finding that a defendant’s claims warrant a hearing.